# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Docket No. 22-3075

DAVID SCHAFFNER, JR. AND THERESA SUE SCHAFFNER,

Plaintiffs-Appellees,

v.

MONSANTO COMPANY,

Defendants-Appellants.

## BRIEF OF AMICUS CURIAE *IN RE ROUNDUP* MDL CO-LEAD COUNSEL IN SUPPORT OF PLAINTIFFS-APPELLEES

On appeal from a judgment entered in the United States District Court for the Western District of Pennsylvania on October 3, 2022, in Docket No. 2:19-cv-1270, seeking reversal of an order entered in the United States District Court for the Northern District of California on February 25, 2022, in Docket No. 2:19-cv-7526.

<table>
<tr><td>

Robin L. Greenwald
James J. Bilsborrow
**Weitz & Luxenberg, PC**
700 Broadway
New York, NY 10003
(212) 558-5500

*Attorneys for Amicus Curiae*
*In re Roundup MDL Co-Lead*
*Counsel*

</td><td>

David Dickens
**The Miller Firm LLC**
108 Railroad Ave.
Orange, VA 22960
(540) 672-4224

Aimee Wagstaff
**Wagstaff Law Firm**
940 Lincoln Street
Denver, CO 80203
(303) 376-6360

</td></tr>
</table>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTEREST OF THE AMICUS CURIAE ..................................................................... 1

SUMMARY OF ARGUMENT ................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ................................................... 4

ARGUMENT ............................................................................................................. 9

I. THE DOCTRINE OF COLLATERAL ESTOPPEL PRECLUDES MONSANTO FROM RELITIGATING ISSUES OF PREEMPTION THAT WERE SQUARELY CONSIDERED AND DECIDED IN *HARDEMAN*. .......................................... 9

    A. The Preemption Issues Presented in Monsanto's Instant Appeal are Identical to Those Raised and Rejected by the Ninth Circuit in *Hardeman*. .................................. 12

    B. Issue Preclusion is Appropriate Because the Facts Essential to the Earlier Litigated Issue Have Not Changed and Application of Collateral Estoppel Will Not Work Unfairness on Monsanto. .................................................. 19

    C. No Exceptions to Issue Preclusion Apply ................................................. 21

    D. This Court May Apply Issue Preclusion *Sua Sponte*. ................................. 22

II. NINTH CIRCUIT LAW CONTROLS ISSUES OF FEDERAL LAW IN THE ROUNDUP MDL AND THIS COURT SHOULD ACCORDINGLY APPLY BINDING NINTH CIRCUIT LAW TO RESOLVE THIS APPEAL. ............................. 24

III. THE COURT SHOULD PROHIBIT MONSANTO FROM PURCHASING APPELLATE LITIGATION FOR THE TRANSPARENT PURPOSE OF RELITIGATING *HARDEMAN*. ........................................................................ 27

CONCLUSION ......................................................................................................... 28

CERTIFICATIONS OF COUNSEL ......................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Owens-Corning Fiberglas Corp.*,
810 P.2d 549 (Cal. 1991) ............................................................................... 15, 16, 17

*Arizona v. California*,
530 U.S. 392 (2000) .............................................................................................. 22, 23

*Astoria Fed. Sav. & Loan Assn. v. Solimino*,
501 U.S. 104 (1991) ..................................................................................................... 10

*Barker v. Lull Engineering Co.*,
573 P.2d 443 (Cal. 1978) ............................................................................................. 16

*Barrera v. Monsanto Co.*,
No. N15C-10-118 VLM, 2016 WL 4938876 (Del. Super. Ct. Sept. 13, 2016) .......... 8

*Beyond Pesticides v. Monsanto Co.*,
311 F. Supp. 3d 82 (D.D.C. 2018) ................................................................................ 8

*Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*,
63 F.3d 1227 (3d Cir. 1995) .................................................................................... 10, 22

*Carias v. Monsanto Co.*,
No. 15-CV-3677, 2016 WL 6803780 (E.D.N.Y. Sept. 30, 2016) ............................... 8

*Carson v. Monsanto Co.*,
51 F.4th 1358 (11th Cir. 2022) ..................................................................................... 8

*Carson v. Monsanto Co.*,
No. 21-10994, 2022 WL 17813843 (11th Cir. Dec. 19, 2022) ..................................... 8

*Ciarocchi v. Kennedy Mem. Hosp.*,
378 F. App'x 239 (3d Cir. 2010) ................................................................................. 22

*Del. River Port Auth. v. Fraternal Order of Police*,
290 F.3d 567 (3d Cir. 2002) ......................................................................................... 12

*E.I. DuPont de Nemours & Co. C-8 Personal Injury Litigation*,
54 F.4th 912 (6th Cir. 2022) ................................................................................... 20, 21

*Farina v. Nokia Inc.*,

    625 F.3d 97 (3d Cir. 2010)................................................................26

*Fish v. Schwab*,
    957 F.3d 1105 (10th Cir. 2021) ....................................................26

*In re Food Lion, Inc. Fair Labor Standards Act Effective Scheduling Litig.*,
    73 F.3d 528 (4th Cir. 1996) ..........................................................25

*In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,
    391 F.3d 907 (8th Cir. 2004) ........................................................25

*Giglio v. Monsanto Co.*,
    No. 15cv2279 BTM(NLS), 2016 WL 1722859 (S.D. Cal. Apr. 29, 2016) ............................8

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021) ................................................ passim

*Hernandez v. Monsanto Co.*,
    No. CV 16-1988-DMG (Ex), 2016 WL 6822311 (C.D. Cal. July 12, 2016) ..........................8

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
    59 F.4th 55 (3d Cir. 2023) ..............................................10, 11, 25, 26

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
    457 F.3d 244 (3d Cir. 2006)..........................................................10

*Jim Beam Brands Co. v. Beamish & Crawford Ltd.*,
    937 F.2d 729 (2d Cir. 1991)......................................................14, 15

*Jones v. Monsanto Co.*,
    No. 19-0102-CV-W-BP, 2019 WL 9656365 (W.D. Mo. June 13, 2019)................................8

*Keefe v. Prudential Prop. & Cas. Ins. Co.*,
    203 F.3d 218 (3d Cir. 2000)..........................................................27

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
    829 F.2d 1171 (D.C. Cir. 1987) (Ginsburg, J.,),
    *aff'd on other grounds sub nom.*
    *Chan v. Korean Air Lines Ltd.*, 490 U.S. 122 (1989) ................................25, 26, 27

*Kremer v. Chem. Constr. Corp.*,
    456 U.S. 461 (1982)..................................................................9

*Martin v. Monsanto Co.*,
    No. ED CV 16-2168-JFW (SPx), 2017 WL 659014 (C.D. Cal. Feb. 16, 2017) ......................8

*Mendoza v. Monsanto Co.*,
   No. 1:16-cv-00406-DAD-SMS, 2016 WL 3648966 (E.D. Cal. July 8, 2016) .........................8

*Monsanto Co. v. Hardeman*,
   142 S. Ct. 2834 (2022)....................................................................................................6

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322 (1979).......................................................................................10, 21, 22

*Peloro v. United States*,
   488 F.3d 163 (3d Cir. 2007).......................................................................9, 12, 13

*Phillips v. A-Best Prod. Co.*,
   665 A.2d 1167 (Pa. 1995)..............................................................................................16

*Pilliod v. Monsanto Co.*,
   282 Cal. Rptr. 3d 679 (Cal. Ct. App. 2021) .................................................................8

*Rawa v. Monsanto Co.*,
   No. 4:17CV01252 AFG, 2017 WL 3392090 (E.D. Mo. Aug. 7, 2017) ...................8

*Raytech Corp. v. White*,
   54 F.3d 187 (3d Cir. 1995), *cert. denied* 516 U.S. 914 (1995)...................... passim

*In re Roundup Prods. Liab. Litig.*,
   214 F. Supp. 3d 1346 (J.P.M.L. 2016).........................................................................4

*In re Roundup Prods. Liab. Litig.*,
   No. 16-md-02741-VC, ECF No. 4549 (N.D. Cal.) ("Pretrial Order No. 158")..................6, 24

*In re Roundup Prods. Liab. Litig.*,
   385 F. Supp. 3d 1042 (N.D. Cal. 2019) .......................................................................5

*Sheppard v. Monsanto Co.*,
   CIV. NO. 16-00043 JMS-RLP, 2016 WL 3629074 (D. Haw. June 29, 2016) .........................8

*Stanton v. D.C. Court of Appeals*,
   127 F.3d 72 (D.C. Cir. 1997).........................................................................................23

*Suppan v. Dadonna*,
   203 F.3d 228 (3d Cir. 2000)...........................................................................................12

*Taylor v. Sturgell*,
   553 U.S. 880 (2008)...................................................................................................9, 10

*Tincher v. Omega Flex*,

104 A.3d 328 (Pa. 2014) ...........................................................................................16, 17

*United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*,
    316 F.3d 392 (3d Cir. 2003)..................................................................................26

*United States v. 5 Unlabeled Boxes*,
    572 F.3d 169 (3d Cir. 2009).............................................................................23, 24

*United States v. Stauffer Chem. Co.*,
    464 U.S. 165 (1984)..............................................................................................12

*Witkowski v. Welch*,
    173 F.3d 192 (3d Cir. 1999)..................................................................................15

**Statutes**

28 U.S.C. § 1407....................................................................................................1, 27

**Other Authorities**

*Restatement (Second) Judgments* § 27 cmt. C .......................................................12

*Restatement (Second) Judgments* § 28....................................................................22

*Restatement (Second) of Torts* § 402A ...................................................................16

**Other Sources**

*Hardeman v. Monsanto*, First Step Brief for Monsanto Co.,
    2019 WL 7040232 (9th Cir. Dec. 13, 2019) ....................................................13, 18

# INTEREST OF THE AMICUS CURIAE[1]

Attorneys Robin Greenwald, David Dickens, and Aimee Wagstaff are co-lead counsel (hereafter, "MDL Co-Lead Counsel") appointed by the Honorable Vince Chhabria to oversee all proceedings in the multidistrict litigation *In re Roundup Products Liability Litigation*, No. 16-md-02741-VC (N.D. Cal.). Co-lead counsel have steered all aspects of this complex centralized proceeding, including serving as trial counsel in *Hardeman v. Monsanto Co.*, and negotiating the adjudication of cases in phases, or "waves," which has resulted in hundreds of remands from the MDL to transferor courts. Plaintiff David Schaffner's case was part of the third "wave" of MDL cases adjudicated through summary judgment and later was remanded to its transferor district in the Western District of Pennsylvania.

MDL Co-Lead Counsel are obligated by virtue of their court appointment to ensure that the orders litigated before the MDL court are uniformly and efficiently implemented in cases remanded to their home jurisdictions so that the aims and benefits of the multidistrict litigation statute, 28 U.S.C. § 1407, are upheld. The parties have expended significant time and financial resources in sharply contesting the issues before the MDL court and Ninth Circuit, and MDL Co-Lead Counsel, on behalf of all plaintiffs with centralized claims, have a vested interest in ensuring that

---

[1] All parties consented to *amicus curiae*'s participation. No party's counsel authored this brief in whole or in part, and no person other than undersigned counsel contributed money intended to fund its preparation or submission.

issues decided in the MDL are not improperly relitigated in other forums. Such relitigation will impair the multidistrict litigation scheme and the efficiencies that all parties, including Monsanto, have obtained from that scheme, while undermining the very purpose of these centralized proceedings: to generate common answers to the complex questions in these cases that, in turn, apply to each of the centralized cases.

Accordingly, MDL Co-Lead Counsel respectfully submits this brief to assist the Court in understanding the factual and procedural background of these MDL proceedings, the opportunities the parties have had to fully and fairly contest the legal issues underpinning these proceedings, and to explain the ramifications on all pending Roundup cases if parties are permitted to serially relitigate settled issues in forums outside the MDL court and Ninth Circuit.

## SUMMARY OF ARGUMENT

In this appeal, Defendant-Appellant Monsanto Company ("Monsanto") seeks to relitigate an issue it previously litigated and lost in the Ninth Circuit Court of Appeals—namely, whether the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") expressly or impliedly preempts state-law failure to warn claims. In *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021), a unanimous Ninth Circuit held that the plaintiff's failure to warn claim under California law was not preempted. The United States Supreme Court denied certiorari.

*Hardeman* was one of thousands of cases from across the country alleging causation of cancer as a result of exposure to Roundup. Many of these cases, including *Hardeman*, were centralized in the Northern District of California for multidistrict proceedings. The instant case, brought under Pennsylvania law, was also centralized as part of these proceedings. The MDL court applied precedent from *Hardeman*, ruled that FIFRA did not preempt Plaintiff's failure to warn claim brought under Pennsylvania law, and remanded the case to its transferor court. Monsanto now seeks to raise the same arguments it raised in *Hardeman*. Indeed, Monsanto does not even suggest that Pennsylvania and California tort law differ in any respect. It simply wishes to relitigate that prior outcome in a new forum. The doctrine of collateral estoppel precludes this effort.

*First*, the Court should apply principles of issue preclusion and dismiss this appeal. Simply put, issue preclusion forecloses a party from relitigating identical issues that it actually litigated to a final judgment in a prior action. But this is precisely what Monsanto seeks to do here. Issue preclusion does not allow Monsanto's attempt at a second bite at the apple in a new forum.

*Second*, Monsanto's appeal should also be foreclosed under principles of law of the case. The MDL court ruled that Ninth Circuit law applied to federal issues of law, including preemption, in Plaintiffs' case. Monsanto has not appealed that ruling. Accordingly, Ninth Circuit law—*i.e.*, *Hardeman*—is binding and dictates the

outcome of the scope of preemption under FIFRA. The Court should apply that binding precedent and affirm.

*Finally*, in its effort to relitigate *Hardeman* in a new forum, Monsanto has entered a confidential settlement agreement under which it will pay the Plaintiff an undisclosed sum to participate in this appeal. The parties represent that despite the settlement, a live controversy exists, but no one other than the parties know for sure because the agreement is confidential. The Court has an obligation to ensure appellate jurisdiction exists and, accordingly, it should order Monsanto to produce its settlement agreement to ensure jurisdiction is appropriate in this proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2016, the Judicial Panel on Multidistrict Litigation (the "JPML") centralized thirty-seven Roundup-related actions that were then pending in twenty-one districts. *In re Roundup Prods. Liab. Litig.*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016). Centralization was appropriate, according to the Panel's order, because the "actions share common factual questions arising out of allegations that Monsanto's Roundup herbicide, particularly its active ingredient, glyphosate, causes non-Hodgkin's lymphoma." *Id.* Further, "Plaintiffs each allege that they or their decedents developed non-Hodgkin's lymphoma after using Roundup over the course of several or more years." *Id.* At Monsanto's suggestion, the Roundup multidistrict litigation was centralized in the Northern District of California. *Id.* at 1347.

The total number of Roundup actions ultimately exceeded 100,000. *See* Appellant's Br. at 3. Many of these cases engaged in pre-trial proceedings before the MDL court. In *Hardeman v. Monsanto Company*, which was one of the earlier-filed federal cases, the transferee court considered—and rejected—a motion to dismiss contending that the plaintiff's failure to warn claims were preempted by FIFRA. Appx0014. The court later reconsidered—and again rejected—Monsanto's preemption argument on summary judgment, finding that FIFRA did not preempt the plaintiff's failure to warn claims either expressly or impliedly. Appx0020-24. *Hardeman* proceeded to trial, resulting in a jury verdict in the plaintiff's favor. *See In re Roundup Prods. Liab. Litig.*, 385 F. Supp. 3d 1042, 1044 (N.D. Cal. 2019).

Following the verdict, Monsanto appealed to the Ninth Circuit. A unanimous panel affirmed the district court's preemption determinations, ruling that "FIFRA does not expressly preempt Hardeman's claims because FIFRA's requirement that a pesticide not be misbranded is consistent with, if not broader than, California's common law duty to warn."[2] *Hardeman*, 997 F.3d at 954. The court also rejected Monsanto's implied preemption arguments. *Id.* at 958.

Monsanto petitioned the Supreme Court for certiorari. The Supreme Court, in turn, requested the views of the United States Solicitor General. The Solicitor

---

[2] Judge Smith dissented from the court's decision in part, taking issue with the amount of punitive damages imposed. *See Hardeman*, 997 F.3d at 976-83 (Smith, J., dissenting). Judge Smith joined the panel in all other respects.

General's submission urged the Court to affirm, explaining that FIFRA neither expressly nor impliedly preempts state-law requirements to provide a chronic-risk warning on a pesticide label. Appx1071-81. As the Solicitor General explained, "[n]o FIFRA provision or EPA regulation either requires or precludes warnings about harm a pesticide may cause to human health through long-term exposure." Appx1075-76. The Supreme Court denied certiorari. *Monsanto Co. v. Hardeman*, 142 S. Ct. 2834 (2022).

Following the Ninth Circuit's *Hardeman* decision, the transferee court continued to work through pretrial proceedings in cases centralized in the MDL. In so doing, the court issued Pretrial Order No. 158 (hereafter, "PTO 158"), which explained that "for questions of federal law, such as the admissibility of expert testimony under *Daubert*," and preemption, "Ninth Circuit law will govern regardless of where a case originated." *In re Roundup Prods. Liab. Litig.*, No. 16-md-02741-VC, ECF No. 4549 at 1 (N.D. Cal. July 10, 2019). The court then phased the pending cases in "waves" to stage pretrial proceedings more efficiently, with the goal of "prepar[ing] the cases in the MDL for transfer back to their home districts." *Id.*

Plaintiff-Appellee David Schaffner (hereafter, "Schaffner" or "Plaintiff") was part of one such wave. Appx0107, 0135-36. Schaffner's case was originally filed in Pennsylvania state court, but Monsanto removed it to federal court, then tagged it

for transfer to the MDL. Appx0028, 0100, 0104. In other words, Monsanto voluntarily availed itself of the efficiencies offered by the centralized MDL proceedings. After discovery, the transferee court denied Monsanto's motion for summary judgment, applying its prior decision in *Hardeman* to reject contentions that Schaffner's state law failure to warn claims were preempted by FIFRA. Appx0020-26. The court remanded the case for trial. Appx0107, 0135-36. In its remand order, the MDL court pointed to the similarities in Pennsylvania's failure to warn claims and the prior California claims adjudicated in *Hardeman*. Appx0109 ("The claims . . . brought under Pennsylvania state law, are similar to the claims that were brought by Hardeman—namely, that Monsanto failed to warn of the risk that Roundup could cause [non-Hodgkin's lymphoma] . . . .").

Before trial, Plaintiff and Monsanto agreed to a settlement. Appx0140. Although the settlement agreement is confidential, the parties filed a stipulation with the district court summarizing the settlement's terms: in exchange for an undisclosed sum, Plaintiff agreed to dismiss all counts except his failure to warn claim. *Id.* The parties then stipulated to entry of judgment. *Id.* The stipulation also represents that "Monsanto will pay an agreed amount that depends upon the outcome of the appeal, encompasses all contingencies on appeal, and thereby allows entry of a final

judgment by stipulation." Appx0140-41. In other words, Monsanto has paid Plaintiff

for the opportunity to relitigate the preemption issues it lost in *Hardeman*.[3]

Since the first Roundup action was filed in 2015, many federal courts

nationwide have reached decisions in accord with *Hardeman*'s preemption ruling.[4]

Moreover, state courts in California, Delaware, Missouri, and Oregon have

uniformly held that FIFRA neither expressly nor impliedly preempts common law

failure to warn claims.[5] *See, e.g.*, *Pilliod v. Monsanto Co.*, 282 Cal. Rptr. 3d 679,

700-02 (Cal. Ct. App. 2021); *Barrera v. Monsanto Co.*, No. N15C-10-118 VLM,

2016 WL 4938876, at *10-12 (Del. Super. Ct. Sept. 13, 2016).[6] Monsanto has thus

had full opportunity to litigate the scope of FIFRA's preemptive effects before

---

[3] As explained *infra*, this Court should review the settlement agreement to ensure it comports with this Court's precedents.

[4] *See, e.g.*, *Jones v. Monsanto Co.*, No. 19-0102-CV-W-BP, 2019 WL 9656365, at *7-9 (W.D. Mo. June 13, 2019); *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82, 92 (D.D.C. 2018); *Rawa v. Monsanto Co.*, No. 4:17CV01252 AFG, 2017 WL 3392090, at *4-5 (E.D. Mo. Aug. 7, 2017); *Martin v. Monsanto Co.*, No. ED CV 16-2168-JFW (SPx), 2017 WL 659014, at *3-5 (C.D. Cal. Feb. 16, 2017); *Carias v. Monsanto Co.*, No. 15-CV-3677, 2016 WL 6803780, at *2-7 (E.D.N.Y. Sept. 30, 2016); *Hernandez v. Monsanto Co.*, No. CV 16-1988-DMG (Ex), 2016 WL 6822311, at *2-9 (C.D. Cal. July 12, 2016); *Mendoza v. Monsanto Co.*, No. 1:16-cv-00406-DAD-SMS, 2016 WL 3648966, at *1-5 (E.D. Cal. July 8, 2016); *Sheppard v. Monsanto Co.*, CIV. NO. 16-00043 JMS-RLP, 2016 WL 3629074, at *6-11 (D. Haw. June 29, 2016); *Giglio v. Monsanto Co.*, No. 15cv2279 BTM(NLS), 2016 WL 1722859, at *1-3 (S.D. Cal. Apr. 29, 2016);

[5] A panel of the Eleventh Circuit Court of Appeals also unanimously ruled that FIFRA did not preempt failure to warn claims pled under Georgia law. *Carson v. Monsanto Co.*, 51 F.4th 1358 (11th Cir. 2022). This decision was vacated and is under review by the full court. *See Carson v. Monsanto Co.*, No. 21-10994, 2022 WL 17813843 (11th Cir. Dec. 19, 2022). Although *Carson* was litigated in federal court, it was not centralized as part of the MDL because the plaintiff alleged a distinct injury that fell outside the JPML's centralization order—namely, malignant fibrous histiocytoma. *See Carson*, 51 F.4th at 1360.

[6] Trial court decisions from Missouri and Oregon courts are unpublished.

numerous tribunals. This appeal is its latest effort to relitigate issues it has had a full and fair opportunity to contest from coast to coast.

## ARGUMENT

Through this appeal, Monsanto attempts to relitigate issues of federal law that it fully and fairly litigated and lost before the MDL court and the Ninth Circuit, and for which certiorari was denied. Its goal is transparent: to continue taking bites at the apple in the hopes of achieving the outcome that it wants. And with tens of thousands of Roundup cases pending in federal and state courts nationwide, Monsanto presumably intends to pursue appeals like this one all over the country. The law does not permit such serial relitigation and Monsanto should be estopped from doing so here.

## I. THE DOCTRINE OF COLLATERAL ESTOPPEL PRECLUDES MONSANTO FROM RELITIGATING ISSUES OF PREEMPTION THAT WERE SQUARELY CONSIDERED AND DECIDED IN *HARDEMAN*.

The doctrine of collateral estoppel, also known as issue preclusion, "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) ("[T]he usual rule is that merits of a legal claim once decided in a court of competent jurisdiction are not subject to redetermination in another forum."). The doctrine seeks to "protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on

judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *see also Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 457 F.3d 244, 254-55 (3d Cir. 2006) (emphasizing the "vital interest" in protecting "judicial determinations that were the products of costly litigation and careful deliberation"). Simply put, once a court decides an issue, the "losing litigant deserves no rematch after a defeat fairly suffered." *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 107 (1991).

Issue preclusion is applicable regardless of whether the parties in the second action are identical to those before the court in earlier litigation. *See Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1232 (3d Cir. 1995) ("complete identity" is not required). A plaintiff "who was not a party to a prior judgment" can use that judgment "offensively to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 328 (1979); *see also Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995), *cert. denied* 516 U.S. 914 (1995).

Under this doctrine of non-mutual issue preclusion, or offensive collateral estoppel, courts are given "broad discretion" to preclude defendants from relitigating issues against a plaintiff when: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential

to the prior judgment." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 63 (3d Cir. 2023). This Court has also recognized that issue preclusion may be inappropriate "if facts essential to the earlier litigated issue have changed," or when the doctrine's application would "work unfairness to [the] party against whom estoppel is asserted." *Raytech*, 54 F.3d at 190.

In this case, there is no real dispute that three of the four issue preclusion considerations set forth in *Home Depot* are satisfied: Monsanto's express and implied preemption arguments were actually litigated in *Hardeman*;[7] the preemption issues were determined by a final and valid judgment (underscored by the Supreme Court's denial of certiorari); and those determinations were essential to the judgment in Mr. Hardeman's favor. Accordingly, amici focus below on the only factor Monsanto could even theoretically contest: whether the issue sought to be precluded—preemption of Schaffner's failure to warn claim—is identical to an issue that was already rejected by the MDL court, Ninth Circuit, and the Supreme Court. As set forth below, the issues are identical. In addition, amici address the additional considerations set forth in *Raytech*, explaining that the facts essential to the earlier litigated issue have not changed and that estoppel will not work "unfairness" on Monsanto, as it is has had repeated opportunities to litigate the issue of preemption

---

[7] *See, e.g.*, Appellant's Br. at 39 (reiterating that "In *Hardeman* . . . the Ninth Circuit held that claims **like those here** are not preempted" (emphasis added)).

before numerous courts. Monsanto should therefore be collaterally estopped from relitigating the preemption issues it raises in this case.

**A.** **The Preemption Issues Presented in Monsanto's Instant Appeal are Identical to Those Raised and Rejected by the Ninth Circuit in *Hardeman*.**

Issues are identical, for purposes of issue preclusion, even where there is not a perfect identity of factual or legal issues, such that the defendant is merely relitigating the "same" fundamental issue. *Peloro*, 488 F.3d at 174. "Identity of the issue[s] is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (internal quotation omitted). Accordingly, the court must determine whether there is any material difference between the issues—in other words, whether the differences are of "legal significance" in "resolving the issues presented in both cases." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984). This extends to "***subsequent suits based on a different cause of action***." *Del. River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002) (emphasis added).

This Court considers the *Restatement (Second) of Judgments* in determining whether issues are sufficiently identical to preclude reargument. *Peloro*, 488 F.3d at 175 n.12 (citing *Restatement (Second) of Judgments* § 27 cmt. C). When the matters presented in each action lack perfect identity, the court considers whether (1) there

is "substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first," (2) "the new evidence or argument involve[s] application of the same rule of law as that involved in the prior proceeding," (3) "pretrial preparation and discovery relating to that matter presented in the first action [could] reasonably be expected to have embraced the matter sought to be presented in the second," and (4) "[h]ow closely related are the claims involved in the two proceedings." *Id.*

In the present appeal, there is substantial overlap between the facts and issues litigated in *Hardeman*; indeed, Monsanto's current brief largely repeats the preemption arguments it set forth in the Ninth Circuit. *See Hardeman v. Monsanto Co.*, First Step Brief for Monsanto Co., 2019 WL 7040232, at *20 (9th Cir. Dec. 13, 2019) (hereafter, "Monsanto *Hardeman* Br.") (summarizing preemption argument and contending that "*any* state-imposed cancer warning would be in addition to or different from federal requirements, and is expressly preempted" (emphasis added)). Further, while Monsanto may argue that this appeal implicates a different state's law than that pled in *Hardeman*, the differences between each state's failure to warn claim are immaterial and thus of no legal significance to the issue preclusion analysis. Monsanto acknowledged as much in its underlying summary judgment briefing before the MDL court, identifying no differences between Schaffner's

failure to warn claim and that litigated in *Hardeman*, and instead simply incorporating by reference the arguments it made in *Hardeman*. Appx0765-68.

When an issue in question requires a comparison of the standard provided by two separate rules, as is presented here, identity exists unless "the difference in applicable legal standards is 'substantial.'" *Raytech Corp.*, 54 F.3d at 191 (internal quotation omitted). In *Raytech*, this Court considered whether the defendant was precluded from challenging successor liability after the District of Oregon found it was liable for its predecessor's torts under Oregon law, and the Ninth Circuit affirmed. *Id.* at 190. The defendant later filed bankruptcy in Connecticut and sought a declaratory judgment that it was not liable as a successor under Connecticut law. *Id.* The District of Connecticut collaterally estopped the defendant from relitigating successor liability, notwithstanding the difference between Oregon and Connecticut law. *Id.* On appeal, the defendant argued that the difference between Connecticut and Oregon law was dispositive because Oregon uniquely required no finding of fraudulent intent, whereas such a finding was a necessary predicate in Connecticut. *Id.* at 191. Thus, according to the defendant, the issues in the Oregon and Connecticut cases were not identical and thus collateral estoppel did not apply.

This Court ruled that the differences between the two state laws were not "substantial," and therefore could not establish a "difference in the applicable legal standard" such that issue preclusion did not apply. *Id.* (citing *Jim Beam Brands Co.*

*v. Beamish & Crawford Ltd.,* 937 F.2d 729, 734 (2d Cir.1991) (holding that issues "bear[ing] the same label" should be considered "identical [unless] the standards governing them are ***significantly different***" (emphasis added))). Because Oregon and Connecticut "largely relied [on] the same factors," "the issue addressed and resolved [in Oregon was] 'in substance the same' issue" the defendant raised in Connecticut. *Id.* at 193. Further, although the Connecticut court had not expressly considered fraud in its analysis, as required by Oregon law, both state laws contemplated "indicia of improper purpose," which was sufficiently similar to render the differences between the state laws insubstantial. *Id.* The issues were therefore "identical" for purposes of issue preclusion and prohibited the defendant from relitigating successor liability. *Id.* at 195; *see also Witkowski v. Welch*, 173 F.3d 192, 203 (3d Cir. 1999) (finding the identity of issues requirement "fulfilled," for "***even if there was not a precise identity of the 'causes of action' asserted, it would be of no legal consequence***" because the issues were the same (emphasis added)).

Just as with the state laws considered in *Raytech*, there is no legally significant difference between California and Pennsylvania's failure to warn laws. Under California law, a product is defective if "it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and the product is supplied and no warning is given." *Anderson v. Owens-Corning Fiberglas Corp.*, 810 P.2d

549, 553-54 (Cal. 1991) (internal citation omitted). Comparatively, a plaintiff in Pennsylvania "must show that a warning of a particular danger was either inadequate or altogether lacking, and that this deficiency in warning made the product 'unreasonably dangerous.'" *Phillips v. A-Best Prod. Co.*, 665 A.2d 1167, 1171 (Pa. 1995). Although the two standards present minor linguistic differences, they are functionally the same. Indeed, even the Pennsylvania Supreme Court believes its law is legally identical to California's.

In *Tincher v. Omega Flex*, the Pennsylvania Supreme Court observed that Pennsylvania's failure to warn law was modeled after the California Supreme Court's holding in *Barker v. Lull Engineering Co.*, explaining that California had "pioneered the alternate consumer expectation/risk-utility balancing test as a prevailing standard of proof in strict liability cases." 104 A.3d 328, 408 (Pa. 2014) (citing *Barker*, 573 P.2d 443 (Cal. 1978), and emphasizing "the similarity of the approach we have approved to the *Barker* standard of proof"). Moreover, both state's failure to warn claims derive from the principles set forth in the *Restatement (Second) of Torts*, section 402A. *See Tincher*, 104 A.3d at 358 (observing that "[e]arly decisional law in Pennsylvania explained the genesis and nature of the strict liability cause of action, with reference to Section 402A of the Second Restatement"); *Anderson*, 810 P.2d at 553-54 (explaining that seminal California

tort law decisions drew from "the Restatement Second of Torts section 402A" in crafting the state's common law standard).

There is, accordingly, no material difference between California and Pennsylvania's failure to warn laws, their underlying principles, language, or their purpose; Pennsylvania's Supreme Court has confirmed as much, *see Tincher*, 104 A.D.3d at 408. Under this Court's precedents, any differences are therefore not "substantial." *Raytech*, 54 F.3d at 191. To the contrary, both laws seek to provide recourse for dangers about which Monsanto was aware but did not warn. This exact point was made by the MDL court in remanding Schaffner's case for trial. *See* Appx0109 (explaining that failure to warn claims "under Pennsylvania state law, are similar to the claims that were brought by Hardeman"). As in *Raytech*, the California law at issue in *Hardeman* "addressed and resolved . . . 'in substance the same' issue" Monsanto has raised in this case. It should be precluded from a second bite at the apple. *Id.* at 193.

Monsanto does not even attempt to differentiate California and Pennsylvania law, but rather treats all state-law failure to warn requirements, including California and Pennsylvania's, as functionally identical. Monsanto emphasizes, as it did in *Hardeman*, that "[b]ecause . . . FIFRA does not require a cancer warning . . . *a state requirement* demanding such a warning is 'in addition to' federal requirements." Appellant's Br. at 27, 36, 38 (emphasis added). Further, "FIFRA preempts *any state*

***labeling requirement*** that is in addition to or different from those required . . . under FIFRA." *Id.* at 1, 20, 21, 25, 41 (emphasis added) (internal quotations omitted). *Compare* Monsanto *Hardeman* Br., 2019 WL 7040232, at *20, 25-26, 28, 30 (stating that "***any state-imposed cancer warning*** would be in addition to or different from federal requirements," and therefore preempted). In other words, Monsanto's argument presupposes that ***all*** state-law failure to warn claims are functionally equivalent for purposes of its preemption argument. There is nothing unique about Pennsylvania law, as evidenced by the fact that Monsanto essentially ignores it. Indeed, as if to underscore this point, Monsanto devotes nine pages of its opening brief to its argument that *Hardeman* was wrongly decided yet fails to cite a single case analyzing the contours of Pennsylvania's failure to warn standard. If ever a party was transparently attempting to relitigate an issue in a new forum, this is it.

Monsanto's discussion of the application of *Bates* also eliminates any meaningful differences between Pennsylvania and California common law. Monsanto argues that where any "common-law failure to warn claim[s] seek to enforce a state-law 'requirement for labeling or packaging'" that would contradict the EPA's findings, "adding any such warnings" would render Roundup "misbranded," in violation of federal law. Appellant's Br. at 2, 9, 38, 48-50; *compare* Monsanto *Hardeman* Br., 2019 WL 7040232, at *6, 20, 27-29. This includes, of course, both California and Pennsylvania's failure to warn laws. Monsanto thus

argues that state-law failure to warn claims necessarily fall within FIFRA's express preemption provision, meaning that any such law that would require a cancer warning presents an "identical" issue.

### B. Issue Preclusion is Appropriate Because the Facts Essential to the Earlier Litigated Issue Have Not Changed and Application of Collateral Estoppel Will Not Work Unfairness on Monsanto.

In *Raytech*, this Court explained that issue preclusion may be inappropriate "if facts essential to the earlier litigated issue have changed," or when the doctrine's application would "work unfairness to [the] party against whom estoppel is asserted." *Raytech*, 54 F.3d at 190. As *Raytech* made clear, however, application of issue preclusion is impacted only if there is a change in "controlling facts," or "facts essential to a judgment." *Id.* at 193.

There is no material change in fact or circumstances since *Hardeman* that prohibits this Court from applying issue preclusion in this case. To the contrary, the pertinent facts underlying *Hardeman* and this case are the same, and to the extent facts have changed, they now provide greater support for Plaintiff's argument.[8] None of the events identified in Monsanto's brief occurred after the Supreme Court denied certiorari in *Hardeman*. And they surely do not constitute the sort of unavailable,

---

[8] As set forth in Plaintiff's opening brief, one of Monsanto's principal arguments for impossibility preemption in *Hardeman* was that the EPA in 2019 issued an advisory letter purporting to inform glyphosate-based herbicide manufacturers that the agency would not approve a label change to add a cancer warning. *See, e.g.*, Appellees' Br. at 44. Since that time, the EPA has clarified that it would approve a cancer warning. *See id.*

controlling facts that the *Raytech* court described. Rather, as was the case in *Raytech*, Monsanto's brief is merely "an updated version of a similar argument it made on appeal . . . before the Ninth Circuit." *Id.* at 194-95.

The Sixth Circuit Court of Appeals' recent decision in *E.I. DuPont de Nemours & Co. C-8 Personal Injury Litigation* is instructive. There, the court applied issue preclusion in multidistrict proceedings, foreclosing relitigation of the issue of defendant's duty, breach, and foreseeability, which were resolved in a prior bellwether trial. 54 F.4th 912, 917, 923 (6th Cir. 2022). On appeal, the court sought to determine whether the "identical issue was actually decided in the former case." *Id.* at 923. Although "[f]actual differences d[id] exist among the different cases," the court focused on "whether any of those factual differences are legally significant—i.e., were crucial to resolving the issues in the compared cases." *Id.* at 923. DuPont contended that each plaintiff was differently situated, meaning that its duty, breach, and foreseeability presented different issues. The court rejected this contention, explaining that the argument "ignore[d] the fundamental principle that the pertinent factual issues . . . in each trial revolved around DuPont's conduct and knowledge in relation" to the plaintiffs. *Id.* at 924. According to the court, the "focus of the jury's inquiry in each of the cases, was on DuPont's conduct" rather than each plaintiff's individual claims. *Id.* "To say otherwise . . . would make it virtually impossible to

ever find preclusive effect," even though the tortious conduct at issue "impacted the Plaintiffs in virtually identical ways." *Id.*

Similarly, the issues involved in this appeal revolve around Monsanto's conduct and failure to warn consumers that Roundup was carcinogenic. Schaffner's case thus presents pertinent factual issues that are identical to those in *Hardeman*. For this reason, Monsanto's brief is almost wholly silent as to the underlying facts of Schaffner's claim. *See* Appellant's Br. at 18. The pertinent facts presented relate only to the EPA's registration of Roundup and Monsanto's own conduct, while the facts specific to Schaffner's case are essentially an afterthought. In short, the issues at play in this matter are identical to those in *Hardeman*, presenting a pure question of law that the Ninth Circuit has conclusively decided. Issue preclusion should apply.

### C. No Exceptions to Issue Preclusion Apply.

When the requirements for issue preclusion are met, courts should apply the doctrine to preclude relitigation unless the court determines that one of the exceptions set forth in the Supreme Court's decision in *Parklane Hosiery*, 439 U.S. at 330-31, is present. *See also Raytech*, 54 F.3d at 195-96 (characterizing these as "fairness" factors). *Parklane* requires consideration of whether: (i) the plaintiff sought to gain an unfair advantage by "adopt[ing] a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment;" (ii) the defendant had "little incentive" to mount a vigorous defense in the first action

because the case involved minimal damages and the prospect of future lawsuits concerning the same issue was unforeseeable; (iii) the plaintiff seeks to selectively rely upon a judgment that is "inconsistent with one or more previous judgments in favor of the defendant;" or (iv) "the second action affords . . . procedural opportunities unavailable in the first action that could readily cause a different result." *Parklane*, 439 U.S. at 330-31. None of the *Parklane* factors are even arguably applicable in this case and thus the Court should find that Monsanto's arguments are collaterally estopped.[9]

### D.    This Court May Apply Issue Preclusion *Sua Sponte*.

Although a party may raise issue preclusion as an affirmative defense, the court "may [also] dismiss the action *sua sponte*, even though the defense has not been raised," if the party "is on notice" that a court "has previously decided the issue presented." *Arizona v. California*, 530 U.S. 392, 412-13 (2000); *Ciarocchi v. Kennedy Mem. Hosp.*, 378 F. App'x 239, 240-41 (3d Cir. 2010).

---

[9] Section 28 of the *Restatement (Second) of Judgments* also sets forth certain "Exceptions to the General Rule of Issue Preclusion," most of which are clearly inapplicable here. One of these, called the "unmixed questions of law" exception, counsels courts to consider situations where "the issue is one of law and (a) the two actions involve claims that are substantially unrelated or (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." *Id.* § 28(2). This Court has held that the exception is not applicable unless an "'issue of law' arises in a successive case that is so unrelated to the prior case that relitigation of the issue is warranted." *Burlington N. R.R. Co.*, 63 F.3d at 1237. For the reasons set forth herein, this exception is not applicable to these related Roundup matters.

Such a result is "fully consistent with the policies underlying [issue preclusion]," for when "judicial resources have been spent on the resolution of a question" already decided, relitigating that issue creates "unnecessary judicial waste." *Arizona*, 540 U.S. at 412; *see also United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) (reiterating that "[o]ut of concern for judicial economy and respect for the conclusions reached by other courts considering the same issues, courts have traditionally attached additional importance to the application of res judicata principles," and "may even raise the issue of preclusion *sua sponte*" (internal quotation marks omitted)); *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997) (emphasizing that "[i]ssue preclusion belongs to courts as well as to litigants," and, therefore, "even a party's forfeiture of the right to assert it . . . does not destroy a court's ability to consider the issue *sua sponte*" (internal quotation marks omitted)).

While neither party raised issue preclusion below, the Court should apply the doctrine *sua sponte* to prevent Monsanto from relitigating the same issue that it has had a full and fair opportunity to litigate. Issues of express and implied FIFRA preemption have already consumed enormous judicial resources, as well as the resources of the United States Solicitor General, and now these same arguments have resulted in the filing of multiple briefs before this Court. It is time for this "judicial waste" to stop, *Arizona*, 540 U.S. at 412, and for Monsanto to accept "the

conclusions reached by other courts considering the same issues," *United States v. 5 Unlabeled Boxes*, 572 F.3d at 175. Otherwise, Monsanto will continue to serially relitigate these identical issues in the hopes it will obtain its desired result. Collateral estoppel precludes such gamesmanship.

## II. NINTH CIRCUIT LAW CONTROLS ISSUES OF FEDERAL LAW IN THE ROUNDUP MDL AND THIS COURT SHOULD ACCORDINGLY APPLY BINDING NINTH CIRCUIT LAW TO RESOLVE THIS APPEAL.

Even if the Court declines to apply issue preclusion and dismiss Monsanto's appeal, it should nonetheless adhere to *Hardeman* and the applicable orders of the MDL court and affirm as if the Court were bound by Ninth Circuit law. Monsanto should not be afforded *de novo* review on the issue of FIFRA preemption because that issue has been thoroughly and extensively litigated *in this case*.

Monsanto removed this case to federal court, tagged it for transfer to the MDL, obtained the efficiency advantages provided by centralized federal litigation, and litigated the case through summary judgment pursuant to the MDL court's rulings. One of those rulings, PTO 158, held that Ninth Circuit law governed issues of federal law, regardless of where the case originated. *In re Roundup Prods. Liab. Litig.*, No. 16-md-02741-VC, ECF No. 4549 at 1 (N.D. Cal. July 10, 2019). The Ninth Circuit, through *Hardeman*, in turn has ruled that FIFRA neither expressly nor impliedly preempts state law failure to warn claims. *Hardeman*, 997 F.3d at 954. In rejecting Monsanto's motion for summary judgment on Schaffner's claims, the

MDL court adopted its prior preemption rulings, which were affirmed in *Hardeman*. Appx0020-26.

An MDL transferee court applies the law of the circuit in which the transferee court is located to questions of federal law. *See, e.g.*, *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d 907, 911 (8th Cir. 2004); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (Ginsburg, J.), *aff'd on other grounds sub nom. Chan v. Korean Air Lines Ltd.*, 490 U.S. 122 (1989). This is precisely what the MDL court did in this case in PTO 158, determining that Ninth Circuit law would govern federal issues. Monsanto has never appealed or disputed PTO 158 in this or any other Roundup case.[10] Accordingly, Ninth Circuit law—*i.e.*, *Hardeman*—controls questions of preemption notwithstanding the circuit in which the transferor court sits. Because Ninth Circuit law governs the applicability of preemption in this case, this Court should apply *Hardeman* and affirm.

In this fashion, the preemption principles set forth in *Hardeman* are "law of the case" and Monsanto should be foreclosed from attempting to relitigate them before this Court. "The law of the case doctrine prevents reconsideration of legal issues already decided in earlier stages of a case." *Home Depot*, 59 F.4th at 61

---

[10] If Monsanto did wish to challenge PTO 158, which it has not, the appropriate manner to do so is through direct appeal to the Ninth Circuit. *See In re Food Lion, Inc. Fair Labor Standards Act Effective Scheduling Litig.*, 73 F.3d 528, 531-32 (4th Cir. 1996) (holding that an MDL court's orders are subject to review only through direct appeal to the transferee court's circuit court of appeals).

(internal quotation omitted). In multidistrict litigation proceedings, the doctrine is applicable only if the prior order was entered "within the same case." *Id.* (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010)). Where a party is subject to the transferee court's rulings in its case, like Monsanto was here, those decisions constitute law of the case. *See In re Korean Air Lines*, 829 F.2d at 1176 (explaining that orders of the transferee court apply after remand as "law of the case").

Further, when an issue has been affirmed on appeal, the law of the case doctrine typically precludes reexamination of the same issue in subsequent appeals. *See, e.g.*, *Fish v. Schwab*, 957 F.3d 1105, 1139 (10th Cir. 2021) (explaining that a "decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal" (internal quotations omitted)); *see also United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 397 (3d Cir. 2003) ("one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case" (internal quotation omitted)).

Simply put, the MDL court ruled that Ninth Circuit law governed federal questions for cases in the MDL; *Hardeman* is binding Ninth Circuit law; and Monsanto has never appealed this ruling. This Court should apply that binding law here. To rule otherwise would only undermine the purposes behind centralized multidistrict litigation, allowing Monsanto to endlessly relitigate federal questions

on remand simply because it does not like the result. Such tactics would result "be counterproductive," and would only "generat[e] rather than reduc[e] the duplication and protraction Congress sought to check" by enacting 28 U.S.C. § 1407. *In re Korean Air Lines*, 829 F.2d at 1176.

## III. THE COURT SHOULD PROHIBIT MONSANTO FROM PURCHASING APPELLATE LITIGATION FOR THE TRANSPARENT PURPOSE OF RELITIGATING *HARDEMAN*.

This Court has the duty to ensure the existence of appellate jurisdiction, even if the parties fail to raise the question. *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 223 (3d Cir. 2000). Here, the parties reached a confidential settlement agreement following remand that was staged so that Monsanto could relitigate express and implied preemption issues before a new appellate tribunal. Indeed, the parties' Joint Stipulation for Entry of Judgment acknowledges that "Monsanto intends to appeal" the consent judgment entered on Schaffner's failure to warn claim and "will pay Plaintiff an agreed amount that depends upon the outcome of the appeal, encompasses all contingencies on appeal, and thereby allows entry of a final judgment by stipulation." Appx0140-41. But there is no way for this Court to verify whether appellate jurisdiction exists without reading the terms of the parties' settlement agreement; the Court should thus require the parties to submit that agreement for its review. *See Keefe*, 203 F.3d at 223 (requiring parties to submit settlement agreement for court review to ensure settlement did not moot parties'

controversy). If such a submission is required, amici anticipate the Court will find that Monsanto has paid a hefty sum for the opportunity to take another bite at the preemption apple. Such gamesmanship should be foreclosed, especially in light of Monsanto's serial relitigation tactics.

## CONCLUSION

For the reasons set forth herein, this Court should apply issue preclusion and dismiss Monsanto's appeal. In the alternative, the Court should apply Ninth Circuit precedent set forth in *Hardeman* and affirm.

Dated: April 18, 2023

Respectfully submitted,

/s/ James J. Bilsborrow
James J. Bilsborrow
Robin L. Greenwald
Weitz & Luxenberg, PC
700 Broadway
New York, New York 10003
(212) 558-5500

David Dickens
The Miller Firm LLC
108 Railroad Ave.
Orange, Virginia 22960
(540) 672-4224

Aimee Wagstaff
Wagstaff Law Firm
940 Lincoln Street
Denver, Colorado 80203
(303) 376-6360

*Attorneys for Amicus MDL Co-Lead Counsel*

## CERTIFICATES OF BAR MEMBERSHIP, WORD COUNT, IDENTICAL COMPLIANCE OF BRIEFS, AND VIRUS CHECK

1. I certify that I am a member of the bar of this Court.

2. I certify that the foregoing brief was prepared in a proportionally-spaced, 14-point type and contains 6,483 words.

3. I certify that the text in the electronic version is identical to the text in the paper copies.

4. I certify that a virus detection program has been run on the electronic file and that no virus was detected.

/s/ James J. Bilsborrow
James J. Bilsborrow

# CERTIFICATE OF SERVICE

I hereby certify that this brief has been served through the Court's ECF system on counsel for all parties required to be served on April 18, 2023.

/s/ James J. Bilsborrow
James J. Bilsborrow
