## No. 22-3075

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

DAVID SCHAFFNER, JR. AND THERESA SUE SCHAFFNER,
*Plaintiffs-Appellees,*

v.

MONSANTO COMPANY,*
*Defendant-Appellant.*

On Appeal From The United States District Court For The
Western District of Pennsylvania
No. 2:19-cv-1270-CRE (Eddy, Chief Magistrate Judge)

## REPLY BRIEF OF APPELLANT MONSANTO COMPANY

K. Lee Marshall
BRYAN CAVE LEIGHTON
PAISNER LLP
Three Embarcadero Center,
7th Floor
San Francisco, California
94111-4070
(415) 675-3400

David M. Zionts
Michael X. Imbroscio
Patricio G. Martínez Llompart
Emily A. Vernon
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Defendant-Appellant Monsanto Company*

---

* Defendant-Appellant Monsanto Company was inaccurately identified in the caption as "Monsanto Corporation."

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

GLOSSARY ............................................................................................... vii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 2

I.     FIFRA Expressly Preempts Plaintiffs' Claim. .................................... 2

     A.    Plaintiffs Cannot Deny That Their Failure-to-Warn Claim
           Seeks To Enforce A State Labeling Requirement. ........................... 2

     B.    Plaintiffs Cannot Refute The Fact That No Cancer Warning Is
           Required Under FIFRA, So A State-Law Cancer Warning
           Requirement Is Preempted. ............................................................... 3

          1.    Plaintiffs' Approach Reflects The "Nominal
                Equivalence" Standard The Supreme Court Rejected. .............. 5

          2.    Plaintiffs Cannot Distinguish *Riegel* ......................................... 6

          3.    A "Miscellaneous" Provision Does Not Render EPA's
                Labeling Determinations Irrelevant. ......................................... 9

           4.    Applying the Correct Standards, Plaintiffs' Claim Is
                Preempted ................................................................................ 13

II.    Impossibility Preemption Bars Plaintiffs' Claim. ........................... 14

     A.    Plaintiffs Cannot Credibly Suggest That EPA Was Not Fully
           Informed Of The Supposed Justification For A Cancer
           Warning. .......................................................................................... 15

     B.    Plaintiffs Cannot Explain How EPA, Having Determined That
           Glyphosate Is Not Likely Carcinogenic, Would Approve A
           Warning Stating Glyphosate Causes Cancer .................................... 17

C.    Irrespective of Plaintiffs' Reliance On FIFRA's Miscellaneous Provision, They Cannot Avoid the Conclusion That EPA's Actions Carry The Force Of Law......................................................... 19

III.    This Court Should Decide For Itself Whether Plaintiffs' Claim Is Preempted. ...................................................................................... 21

A.    Offensive Non-Mutual Issue Preclusion Does Not Apply................. 21

B.    Law Of The Case Does Not Apply. ................................................... 26

CONCLUSION ................................................................................................ 28

CERTIFICATE OF COMPLIANCE ........................................................ 29

CERTIFICATE OF BAR MEMBERSHIP .............................................. 30

CERTIFICATE OF SERVICE ................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADP, LLC v. Rafferty*,
  923 F.3d 113 (3d Cir. 2019) ........................................................23, 24

*Arizona v. California*,
  530 U.S. 392 (2000)........................................................................22

*Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*,
  870 F.3d 1140 (9th Cir. 2017) ........................................................8

*In re Avandia Mktg., Sales & Prod. Liab. Litig.*,
  945 F.3d 749 (3d Cir. 2019) ..........................................................17

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005)........................................2, 3, 5, 6, 10, 11, 15

*Burlington N. R. Co. v. Hyundai Merch. Marine Co.*,
  63 F.3d 1227 (3d Cir. 1995) .....................................................21, 25

*Carson v. Monsanto*,
  508 F. Supp. 3d 1369 (S.D. Ga. 2020) ..........................................24

*Chi. Truck Drivers Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*,
  125 F.3d 526 (7th Cir. 1997) .........................................................24

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
  54 F.4th 912 (6th Cir. 2022) .........................................................24

*Eggerling v. Advanced Bionics, L.L.C.*,
  958 F. Supp. 2d 1029 (N.D. Iowa 2013) ........................................25

*Envt'l Def. v. EPA*,
  369 F.3d 193 (2d Cir. 2004) ..........................................................24

*Fellner v. Tri-Union Seafoods, L.L.C.*,
  539 F.3d 237 (3d Cir. 2008) .....................................................14, 20

*In re Ford Motor Co.*,
  591 F.3d 406 (5th Cir. 2009) .................................................................27

*Freeman v. Pittsburgh Glass Works, LLC*,
  709 F.3d 240 (3d Cir. 2013) ..................................................................22

*Goodlin v. Medtronic, Inc.*,
  167 F.3d 1367 (11th Cir. 1999) .............................................................25

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
  59 F.4th 55 (3d Cir. 2023) .....................................................................26

*Keefe v. Prudential Prop. & Cas. Ins. Co.*,
  203 F.3d 218 (3d Cir. 2000) ..................................................................28

*MacDonald v. Monsanto Co.*,
  27 F.3d 1021 (5th Cir. 1994) .................................................................10

*McMullen v. Medtronic, Inc.*,
  421 F.3d 482 (7th Cir. 2005) .................................................................13

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*,
  623 F.3d 1200 (8th Cir. 2010) ..........................................................7, 11

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)...........................................................................3, 11

*Merck Sharpe & Dohme Corp. v. Albrecht*,
  139 S. Ct. 1668 (2019).......................................................9, 20, 21, 24

*Mortellite v. Novartis Crop Protection, Inc.*,
  460 F.3d 483 (3d Cir. 2006) ...................................................................3

*Nat'l R.R. Passenger v. Pa. Pub. Util. Comm'n*,
  288 F.3d 519 (3d Cir. 2002) ..................................................................25

*Nat. Res. Def. Council , Inc. v. EPA*,
  38 F.4th. 34 (9th Cir 2022) .....................................................................4

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979)..........................................................................21, 22

*In re Pharm. Benefit Mgrs. Antitrust Litig.*,
    582 F.3d 432 (3d Cir. 2009) ...............................................................27

*Pharm. Care Mgmt. Ass'n v. District of Columbia*,
    522 F.3d 443 (D.C. Cir. 2008)...........................................................24

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008)...............................................................5, 6, 7

*S. Union Co. v. FERC*,
    857 F.2d 812 (D.C. Cir. 1988)...........................................................23

*Saint-Jean v. Palisades Interstate Park Comm'n*,
    49 F.4th 830 (3d Cir. 2022) ...............................................................27

*Stengel v. Medtronic, Inc.*,
    704 F.3d 1224 (9th Cir. 2013) (en banc) ............................................7

*Thornton v. Tyson Foods, Inc.*,
    28 F.4th 1016 (10th Cir. 2022) .......................................................5, 8

*In re Zofran (Ondansetron) Prod. Liab. Litig.*,
    57 F.4th 327 (1st Cir. 2023)...........................................................20

**Statutes**

7 U.S.C.
    § 136(q)(1)(G)................................................................................3, 10
    § 136(u) ...........................................................................................15
    § 136a(a) ..........................................................................................15
    § 136a(c)(2)(B) ................................................................................17
    § 136a(c)(5)(B) ............................................................................3, 10
    § 136a(f)(2) .............................................2, 9, 10, 11, 12, 19
    § 136a(f)(3) ......................................................................................12
    § 136a(g)(2) .....................................................................................17
    § 136a-1(b)(4) ..................................................................................17
    § 136a-1(b)(5) ..............................................................................4, 20
    § 136j(a)(1)(B) ...................................................................................3
    § 136v(b) .......................................................................................1, 3

Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA),
    Pub. L. No. 80-104, 61 Stat. 163 (1947).........................................12

**Regulatory Materials**

40 C.F.R.
§ 156.62......................................................................................6
§ 156.64......................................................................................6
§ 158.75....................................................................................17

Alkyl Amine Polyalkoxylates; Exemption from the Requirement of a Tolerance,
74 Fed. Reg. 28,616 (June 17, 2009)....................................................16

EPA, Chemical Name: Glyphosate,
https://perma.cc/N8KY-7KJ5 ...............................................................5

EPA, Glyphosate Tolerances: Summary of Tox Data Base (Aug. 22, 1978),
https://perma.cc/2UWJ-28NB...............................................................17

EPA, Jan. 2020 Response from the Pesticide Re-Evaluation Division
to Comments on the Glyphosate Proposed Interim Decision,
https://perma.cc/6Q33-VYJ8 ...............................................................16

EPA, *Pesticide Registration Manual: Chapter 8 – Inert Ingredients*,
https://perma.cc/82R8-7VEW...............................................................16

Final Rule: Glyphosate; Pesticide Tolerances,
73 Fed. Reg. 73,586 (Dec. 3, 2008)...........................................14, 20

**Other Authorities**

*Federal Environmental Pesticide Control Act: Hearings before the
Subcomm. on Agric. Research and Gen. Legislation of the S. Comm.
on Agric. and Forestry on H.R. 10729, Part II*, 92nd Cong. (1972)..................12

*Restatement (Second) of Judgments* (Am. L. Inst. 1982) ..................................23, 24

# GLOSSARY

| | |
|---|---|
| 1993 Reregistration Eligibility Decision | EPA, Reregistration Eligibility Decision (RED) – Glyphosate (Sept. 1993) |
| 2019 Letter to Registrants | EPA, Office of Pesticide Programs, Letter to Glyphosate Registrants Regarding Labeling Requirements (Aug. 7, 2019) |
| 2022 EPA Letter | Letter from Michal Freedhoff, Assistant Administrator, EPA, to Lauren Zeise, Director, Office of Environmental Health Hazard Assessment, California EPA (Apr. 8, 2022) |
| 2022 Interim Decision Withdrawal | EPA Withdraws Glyphosate Interim Decision (Sept. 23, 2022) |
| FIFRA | Federal Insecticide, Fungicide, and Rodenticide Act |
| *Hardeman* U.S. 9th Cir. Br. | Brief of United States as Amicus Curiae in Support of Monsanto, *Hardeman v. Monsanto Co.*, No. 19-16636 (9th Cir.) |
| *Hardeman* U.S. S. Ct. Br. | Brief of United States as Amicus Curiae, *Monsanto Co. v. Hardeman*, No. 21-241 (U.S.) |
| IARC | International Agency for Research on Cancer |
| MDA | Medical Device Amendments of 1976 |
| CropLife Br. | ECF No. 28, Brief of Amicus Curiae CropLife America in Support of Defendant-Appellant |
| MDL Counsel Br. | ECF No. 51, Brief of Amicus Curiae *In re Roundup* MDL Co-Lead Counsel in Support of Plaintiffs-Appellees |
| Monsanto Br. | ECF No. 15, Brief of Defendant-Appellant Monsanto Corp. |
| Pls. Br. | ECF No. 36, Brief of Plaintiffs-Appellees David Schaffner, Jr. and Theresa Sue Schaffner |
| Public Citizen Br. | ECF No. 48, Brief of Amicus Curiae Public Citizen in Support of Plaintiffs-Appellees |

# INTRODUCTION

Plaintiffs do not dispute anything that matters in this appeal.  They do not dispute that Congress instructed the Environmental Protection Agency ("EPA") to determine whether a pesticide's labeling includes all necessary safety warnings.  They do not dispute that EPA discharged that responsibility when approving countless labels of Roundup® and other glyphosate-based products.  They do not dispute that, in doing so, EPA determined that a cancer warning is not necessary to protect health in light of the science, and therefore is not required under FIFRA.  And they do not dispute that under statutes with similar preemption provisions, as interpreted by the Supreme Court and other courts, such a statutory determination by the agency compels preemption.  A state-law labeling requirement to warn that Roundup® causes cancer is "in addition to or different from those required under [FIFRA]," and is therefore expressly preempted.  7 U.S.C. § 136v(b).

Plaintiffs' failure-to-warn claim is also barred by impossibility preemption, because EPA has determined that glyphosate likely does *not* cause cancer.  That means a warning label that glyphosate causes cancer would be false or misleading as EPA views the science.  EPA would thus not approve such a warning, and Monsanto could not change the label without EPA approval.  Federal law made compliance with state law impossible.

Plaintiffs' defense of the judgment rests largely on a "Miscellaneous" provision of FIFRA, 7 U.S.C. § 136a(f)(2). Yet this provision says nothing about either preemption of state tort claims or the effect of EPA's statutory labeling determinations. The Court should reject Plaintiffs' invitation to read this modest provision as upending the normal operation of preemption language that Congress has elected to include in numerous statutes.

Finally, Plaintiffs' preclusion arguments, offered on appeal for the first time, provide no basis to avoid a ruling on the merits of the preemption issue squarely presented here.

## ARGUMENT

### I.    FIFRA Expressly Preempts Plaintiffs' Claim.

### A.    Plaintiffs Cannot Deny That Their Failure-To-Warn Claim Seeks To Enforce A State Labeling Requirement.

Plaintiffs flout binding precedent in contending (at 28-29) that their common-law failure-to-warn claim does not enforce any "requirement" because it does not require Monsanto "to do anything other than pay a money judgment." The Supreme Court has rejected this argument, stating that "the term 'requirements' in § 136v(b) reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties" that "set a standard for a product's labeling." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443, 446 (2005). Plaintiffs rely on language in *Bates* discussing jury verdicts "that merely motivat[e] an optional decision," but that

discussion addressed "'genuine' design defect claims,'" which do not set a labeling standard even if they "induce a manufacturer to alter its label to reflect a change in the list of ingredients." *Id.* at 445.  By contrast, the Court held, the plaintiffs' "negligent-failure-to-warn claims are premised on common-law rules that qualify as 'requirements for labeling or packaging.'" *Id.* at 446; *accord Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483, 491 (3d Cir. 2006).

>    **B.    Plaintiffs Cannot Refute The Fact That No Cancer Warning Is Required Under FIFRA, So A State-Law Cancer Warning Requirement Is Preempted.**

The scope of express preemption depends on "the language of the pre-emption statute and the 'statutory framework' surrounding it." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).  FIFRA preempts any State labeling requirement "in addition to" or "different from" what is "required under" FIFRA.  7 U.S.C. § 136v(b).  It requires registrants to provide warnings "necessary" to "protect health," and directs EPA to "determine[]" whether a pesticide product's labeling "compl[ies] with the requirements of [FIFRA]" — including by having the necessary safety warnings. *Id.* §§ 136a(c)(5)(B), 136(q)(1)(G).  Registrants then must use the EPA-approved label. *Id.* § 136j(a)(1)(B).  Under the scheme Congress enacted, registrants are required to provide the safety warnings *that EPA determines are necessary*.  States may not require additional warnings.

Plaintiffs never acknowledge EPA's statutory obligation to determine what safety warnings are required.  Nor do they grapple with how EPA actually exercised those statutory obligations when it comes to glyphosate.  *See* Monsanto Br. 6-10. They disregard EPA's "Registration Standard" for glyphosate products, which considered cancer risks, adopted the "regulatory position" that EPA "will issue registrations for" glyphosate products, and prescribed "Required Labeling" that did not include a cancer warning.  Appx0826-0827, Appx0833-0834.  Plaintiffs never even mention EPA's 1993 statutory reregistration of glyphosate, which constituted "regulatory action," 7 U.S.C. § 136a-1(b)(5), determined that glyphosate products "will not pose unreasonable risks or adverse effects to humans," and mandated labeling changes without requiring a cancer warning.  Appx0850, Appx0882.  And Plaintiffs ignore EPA's approval of hundreds of glyphosate labels without a cancer warning, consistent with EPA's explanation that it has "never required a labeling warning of a cancer risk posed by Roundup."  Appx0211 (*Hardeman* U.S. 9th Cir. Br.).[1]

---

[1] Plaintiffs (at 36-37) highlight the Ninth Circuit's vacatur of an interim registration review decision, but do not explain how a 2022 vacatur of a 2020 decision can alter what was required under FIFRA before 2006, when Plaintiff David Schaffner was diagnosed.  Further, in remanding for EPA to better explain its reasoning, the court stressed that "no disruptive consequences will result from vacating the human-health portion of the Interim Decision because that portion simply maintained the status quo." *Nat. Res. Def. Council, Inc. v. EPA*, 38 F.4th. 34, 52 & n.13 (9th Cir. 2022).  The undisturbed status quo is EPA's determination that glyphosate is not

These undisputed points compel reversal. Congress preempted any state labeling requirement that stands in addition to what is required under FIFRA; it directed EPA to determine what safety warnings are required under FIFRA; EPA determined that no cancer warning is required under FIFRA; and Congress required registrants to use the EPA-approved label. In parallel circumstances the Supreme Court and other circuits apply preemption. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 322 (2008); *Thornton v. Tyson Foods, Inc.*, 28 F.4th 1016, 1024 (10th Cir. 2022). Plaintiffs cannot evade the same result here.

1.   <u>Plaintiffs' Approach Reflects The "Nominal Equivalence" Standard The Supreme Court Rejected.</u>

Plaintiffs dwell (at 29-31) on a generalized and abstract comparison of "FIFRA's misbranding provision and the elements of a Pennsylvania tort claim," to the exclusion of how they are actually applied. This superficial exercise mirrors the very "nominal equivalence" standard *Bates* rejected. *Bates*, 544 U.S. at 454. On Plaintiffs' view, 50 States can require 50 different warnings for the same pesticide premised on a given State's general tort requirement to label products safely, even if an expert federal agency, exercising congressionally-delegated authority, has

---

carcinogenic and no cancer warning is required. EPA has since reaffirmed, moreover, that its "underlying scientific findings regarding glyphosate, including its finding that glyphosate is not likely to be carcinogenic to humans, remain the same." Appx1091 (2022 Interim Decision Withdrawal). Just since September 2022, EPA has registered at least a dozen glyphosate products and approved over two dozen glyphosate product labels—all without cancer warnings. *See* EPA, Chemical Name: Glyphosate, https://perma.cc/N8KY-7KJ5.

determined that those warnings are not required under FIFRA. That cannot be reconciled with a "Uniformity" provision preventing "50 different labeling regimes [from] prescribing the . . . wording of warnings." *Bates*, 544 U.S. at 452.

Plaintiffs cannot explain away *Bates*' illustration of genuine equivalence, under which a State cannot demand a "DANGER" warning where EPA has chosen "CAUTION." 544 U.S. at 453. According to Plaintiffs, preemption applied there only because "a federal regulation . . . *assigned the term 'CAUTION' to that pesticide*." Pls. Br. 37 (emphasis added). But the regulation "assigns [] warnings to particular *classes* of pesticides based on their toxicity." 544 U.S. at 453 (emphasis added); *see* 40 C.F.R. §§ 156.62, 156.64. No regulation determines toxicity levels, or assigns warning language, to any *specific* pesticide. EPA makes that pesticide-specific determination through the same registration process by which it decides whether cancer warnings are required. Monsanto Br. 28-30. Under *Bates*, EPA's pesticide-specific determinations cannot be irrelevant to whether state and federal requirements are genuinely equivalent.

## 2. Plaintiffs Cannot Distinguish *Riegel*.

In *Riegel v. Medtronic*, the Supreme Court held that the Food and Drug Administration's premarket approval of a medical device "imposes 'requirements' under the MDA," "for the reason that the FDA has determined that the approved form" of the device is acceptable. 552 U.S. at 322-23. EPA's approval of a

pesticide's labeling likewise establishes requirements under FIFRA, because EPA has determined that its safety warnings are acceptable.

*Riegel* disposes of Plaintiffs' reliance on the fact that FIFRA "specifically require[s] manufacturers to report 'additional factual information regarding unreasonable adverse effects' of the pesticide." Pls. Br. 32. The same is true of the MDA: "[a]fter premarket approval, the devices are subject to reporting requirements," including information about new scientific developments and adverse events. *Riegel*, 552 U.S. at 319. Similarly, like Plaintiffs here, the *Riegel* plaintiffs urged the Supreme Court to reject preemption because premarket approval "does not lock the manufacturer into a particular label," since it can "seek FDA permission to alter the labeling." Petrs' Br., *Riegel*, 2007 WL 2456946, at *30-31 (U.S. Aug. 27, 2007). That did not change the Court's conclusion that premarket approval establishes device-specific requirements under the MDA, and it should not prevent this Court from deciding that EPA's label approval establishes pesticide-specific requirements under FIFRA.[2]

---

[2] Future cases might implicate whether a claim premised on a violation of federal reporting requirements is preempted. *Compare In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1205-06 (8th Cir. 2010) (claim that device manufacturer "failed to provide the FDA with sufficient information" was preempted), *with Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1232-34 (9th Cir. 2013) (en banc) (claim that manufacturer failed to file adverse event reports was not preempted). Plaintiffs have not preserved or advanced such a theory here. Understandably so, as there is no serious possibility that EPA lacked available information that would have changed its view of glyphosate.

Plaintiffs cannot meaningfully distinguish *Riegel*. To be sure, FIFRA's scheme is in some respects "decentralized." Pls. Br. 38. But that is why FIFRA does not preempt *all* sale or use requirements. FIFRA does, however, preempt *labeling and packaging* requirements. Within that core federal domain, the statutory scheme is decidedly centralized, preempting any state requirements that are "in addition to or different from" federal requirements. Put differently, FIFRA's preemption provision covers a narrower set of requirements, but when it applies, the scope of preemption is identical to preemption under the MDA. Plaintiffs offer no textual justification for why these two similar preemption provisions should have radically different interpretations.

Meat and poultry preemption decisions reinforce the point. As with pesticides, and unlike with medical devices, States can decide to ban the sale of specific meat and poultry products. *See Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140, 1145–53 (9th Cir. 2017) ("Nothing in the federal law or its implementing regulations limits a state's ability to regulate the types of poultry that may be sold for human consumption"). But where States allow such products to be sold, and a federal agency approves their labels and "determine[s]" that they "are not misbranded," States may not demand the label be "changed" from "what the [agency] already approved." *Thornton*, 28 F.4th at 1025-26. While Pennsylvania could theoretically ban glyphosate, what it cannot do is allow

8

glyphosate to be sold but then require a cancer warning in addition to the EPA-determined labeling requirements.

### 3. A "Miscellaneous" Provision Does Not Render EPA's Labeling Determinations Irrelevant.

Plaintiffs effectively rest their case on a "miscellaneous" provision that long-predated Congress's enactment of FIFRA's labeling uniformity provision. 7 U.S.C. § 136a(f)(2). That miscellaneous provision constitutes their only explanation for why myriad formal EPA actions lack "the gravity to support preemption." Pls. Br. 34. If by "gravity" Plaintiffs mean force of law, they do not engage with Monsanto's explanation for why "force of law" is not relevant to express preemption. Monsanto Br. 40-42. Nor do they address Monsanto's explanation for why EPA's formal labeling determinations satisfy the Supreme Court's force-of-law standards: EPA acted "within the scope of the authority Congress has lawfully delegated." *Merck Sharpe & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019); Monsanto Br. 42, 53-57.

Though Plaintiffs insist that § 136a(f)(2) changes everything, they do not engage with Monsanto's discussion (at 42-46) of that provision. They simply repeat that "registration represents only 'prima facie evidence' that a pesticide's labeling comply [sic.] with FIFRA." Pls. Br. 32 (quoting 7 U.S.C. § 136a(f)(2)); *see also id.* at 33-34, 37-39. No measure of repetition of that mantra can defeat preemption.

*First*, the provision states only that registration cannot be treated as a "defense for the commission of any offense under this subchapter." 7 U.S.C. § 136a(f)(2). A "claim grounded in state common law is not an offense under FIFRA," so § 136a(f)(2) "has no bearing" on preemption. *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1025 n.4 (5th Cir. 1994). Public Citizen (at 16) argues that *Bates* superseded *MacDonald* by making § 136a(f)(2) "relevant to the analysis," but it cites no case agreeing with that assertion—likely because *Bates*' singular, glancing reference to that provision hardly suggests the centrality Plaintiffs place on it. *See* 544 U.S. at 438.

*Second*, § 136a(f)(2) at most addresses the effect of "registration." Only "registration" "may not be construed as a defense," and only "registration" "shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of [FIFRA]." 7 U.S.C. § 136a(f)(2). Plaintiffs elide the statutory text when they assert that "EPA's *labeling determinations* are not dispositive of FIFRA compliance." Pls. Br. 33 (emphasis added). The provision says nothing about EPA's "labeling determinations," even as other parts of the statute expressly require EPA to "determine" whether a pesticide includes all necessary safety warnings. 7 U.S.C. §§ 136a(c)(5)(B), 136(q)(1)(G).

There is a difference between treating "registration" as a defense and treating labeling determinations as one. If a registrant misbrands its pesticide by deviating

from the EPA-approved label, registration would not prove compliance with FIFRA. Registration, in other words, would be no defense.  Similarly, *Bates* arguably involved a defendant invoking registration as a defense.  In light of EPA's waiver of efficacy review, the agency's registration of a pesticide did "not reflect any determination on the part of EPA" on the relevant labeling issue in *Bates*.  544 U.S. at 440.  Here, by contrast, EPA has made the relevant determination: no cancer warning is required.  Nothing in § 136a(f)(2)'s text suggests that *this statutory determination* shall not be construed as a defense, or shall only constitute prima facie evidence of compliance.

For similar reasons, § 136a(f)(2) does not distinguish *Riegel*.  *See* Pls. Br. 38; Public Citizen Br. 14.  The provision may confirm that registration alone is not conclusive of FIFRA compliance, but device approval is not conclusive of MDA compliance.  Device manufacturers with premarket approval can be liable for misbranding.  *See Sprint Fidelis Leads*, 623 F.3d at 1205 (claim that a device-maker "modified or failed to include FDA-approved warnings" would not be preempted).  And FDA's approval of a device on the basis of "substantial equivalence" with another device is not conclusive of MDA compliance.  *Lohr*, 518 U.S. at 493.

*Third*, Plaintiffs ignore § 136a(f)(2)'s context.  They do not dispute that the "Miscellaneous" heading informs its interpretation.  Monsanto Br. 42-44.  Further, § 136a(f)(2) sits among similarly modest provisions, such as one confirming that

that EPA "may consult with any other Federal agency." 7 U.S.C. § 136a(f)(3). This is not where one would expect Congress to bury a potent provision upending the way preemption otherwise operates. The point is not that a provision "need[s] to be part of a preemption provision or otherwise explicitly mention preemption to be relevant to a preemption analysis." Public Citizen Br. 17. It is that a "Miscellaneous" provision would be a surprising place for Congress to rewrite the normal rules of preemption, particularly so obliquely.

*Fourth*, Plaintiffs have no answer to § 136a(f)(2)'s enactment history. Monsanto Br. 44 n.11; CropLife Br. 22-23. The original version of § 136a(f)(2) predates FIFRA preemption and dates to a period when the Secretary of Agriculture had to approve a registration even if it *violated* FIFRA. *See* Pub. L. No. 80-104, § 4(c), 61 Stat. 163, 168 (1947). Against that backdrop, it made sense for Congress to memorialize that registration is not a defense.[3]

This Court should not read a "Miscellaneous" provision—which says nothing about preemption or the effect of EPA's statutory labeling determinations—to effectively nullify FIFRA's preemption provision.

---

[3] Legislative history is in accord. When drafters added language that registration is "prima facie evidence" of FIFRA compliance, it was understood to confirm "an unstated premise" already "in the present Act." *Federal Environmental Pesticide Control Act: Hearings before the Subcomm. on Agric. Research and Gen. Legislation of the S. Comm. on Agric. and Forestry on H.R. 10729, Part II*, 92nd Cong. 263 (1972) (statement of E. Hertel, NACA Chairman).

4.     Applying the Correct Standards, Plaintiffs' Claim Is Preempted.

Finally, Plaintiffs focus on whether EPA has "*barred* cancer warnings on glyphosate-containing products." Pls. Br. 35. The Solicitor General's *Hardeman* brief made the same mistake, arguing that EPA's labeling approvals "are not naturally characterized as a FIFRA 'requirement' *that no such warning appear*." Appx1076 (*Hardeman* U.S. S. Ct. Br.) (emphasis added).

These suggestions that EPA would *permit* a cancer warning are wrong. *Infra* pp. 17-19. More importantly, they are irrelevant. "Where a federal requirement permits a course of conduct and the state makes it obligatory, the state's requirement is in addition to the federal requirement and thus is preempted." *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005). Even if EPA *permitted* a cancer warning, it has made a pesticide-specific determination that such a warning is not *required* under FIFRA, and States cannot require a warning "in addition" to those required under FIFRA. For the same reason, Monsanto's express-preemption argument does not exclusively "focus" on EPA's August 2019 letter confirming that a cancer warning would be false or misleading in *violation* of FIFRA. Pls. Br. 35. It is enough that EPA has determined that no cancer warning is required. Plaintiffs' argument to the contrary improperly reduces the preemption provision Congress enacted to a mere restatement of impossibility preemption.

13

In fact, however, EPA has determined that a cancer warning violates FIFRA. That conclusion is supported by, though not dependent on, the 2019 letter.  *See infra* p. 18.  EPA has long concluded that glyphosate is "not a carcinogen."  Final Rule: Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008).  It adopted the "Regulatory Conclusion" that glyphosate "will not pose unreasonable risks or adverse effects to humans" based on its "evidence of non-carcinogenicity for humans."  Appx0882 (1993 Reregistration Eligibility Decision).  A warning stating the opposite of EPA's scientific conclusion would be false or misleading, making a pesticide misbranded.  A State requirement to give this warning is "different from" (as well as "in addition to") what FIFRA requires.

## II.   Impossibility Preemption Bars Plaintiffs' Claim.

Though Plaintiffs assert that the existence of an express preemption provision "should end the analysis" of impossibility preemption, they are compelled to admit that "implied preemption can exist independent of express preemption."  Pls. Br. 41-42.  Even then, Plaintiffs say, "this Court" has restricted their coexistence to "limited circumstances."  *Id.*  It has not.  This Court recognized, without any restriction, that "[t]he inclusion of express preemption provisions does not preclude the operation of ordinary implied preemption principles."  *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 243 n.2 (3d Cir. 2008).

Nor has "the Supreme Court effectively foreclosed the issue." Pls. Br. 42. *Bates* simply "decline[d] to address respondent's argument that petitioners' claims are subject to other types of pre-emption." 544 U.S. at 458 (Thomas, J., concurring in part and dissenting in part). Further, Monsanto argues that it could not comply with a state-law duty to warn of cancer risks because EPA would have rejected a cancer warning. No such impossibility argument could have been considered in *Bates*, because EPA waived review over the efficacy claims at issue. *See* 544 U.S. at 440.

Each requirement for impossibility preemption under *Merck* is satisfied. EPA would reject the cancer warning that Plaintiffs demand, and Monsanto could not add that warning without facing federal criminal and civil liability. Those undisputed facts present a textbook case for impossibility preemption.

## A.    Plaintiffs Cannot Credibly Suggest That EPA Was Not Fully Informed Of The Supposed Justification For A Cancer Warning.

Plaintiffs ignore the vast scientific data EPA considered in evaluating glyphosate. Monsanto Br. 51. Instead, they distinguish glyphosate from "*formulated* Roundup," asserting (at 43) that the latter includes "surfactants that . . . render[] Roundup far more carcinogenic than glyphosate alone." But EPA is not uninformed about formulated pesticides. To the contrary, it has a statutory obligation to determine whether a "pesticide," not just its active ingredient, causes unreasonable adverse health effects. 7 U.S.C. § 136a(a); *see id.* § 136(u)

("'[P]esticide' means (1) any substance *or mixture of substances* . . . ." (emphasis added)).    EPA recognizes that "[t]he entire formulation, including the inert ingredients, must meet [the registration] standard."    EPA, *Pesticide Registration Manual: Chapter 8 – Inert Ingredients*, https://perma.cc/82R8-7VEW.    And it has reviewed and approved the surfactants in Roundup®, addressing their toxicity and lack of carcinogenicity. *See* Alkyl Amine Polyalkoxylates; Exemption from the Requirement of a Tolerance, 74 Fed. Reg. 28,616 (June 17, 2009); Appx0181 (2019 Proposed Interim Decision) (responding to "[m]any commenters [who] expressed concerns that glyphosate formulations are more toxic than glyphosate alone").

Plaintiffs' assertion (at 44) that no one has ever "put concerns about Roundup's carcinogenicity before EPA" is similarly fanciful.    Plaintiff-side litigation experts have laid these arguments before EPA directly. *See, e.g.*, Comment by Charles Benbrook, http://bit.ly/3TciRZ1 (visited May 31, 2023) (sharing with EPA his "expert report in the *Hardeman* case"); EPA, Jan. 2020 Response from the Pesticide Re-Evaluation Division to Comments on the Glyphosate Proposed Interim Decision, https://perma.cc/6Q33-VYJ8 (reflecting EPA's consideration of the

allegations Plaintiffs raise at 8-9). To this day, having been presented with these same theories and arguments, EPA stands by its scientific conclusions.[4]

Finally, Plaintiffs err in suggesting (at 43) that Monsanto should have tested more. One can always hypothesize more testing, but EPA decides whether the data suffices to make the required safety and labeling determinations; if not, it must request more testing. *See* 7 U.S.C. §§ 136a(c)(2)(B), (g)(2), 136a-1(b)(4); 40 C.F.R. § 158.75. As this Court has recognized in applying impossibility preemption, a private litigant is not "the arbiter of which data and information is or is not 'material' . . .—the [agency], and only the [agency], can determine what information is 'material' to its own decision." *In re Avandia Mktg., Sales & Prod. Liab. Litig.*, 945 F.3d 749, 759 (3d Cir. 2019).

**B.    Plaintiffs Cannot Explain How EPA, Having Determined That Glyphosate Is Not Likely Carcinogenic, Would Approve A Warning Stating Glyphosate Causes Cancer.**

EPA has long concluded that glyphosate is not likely to be carcinogenic. Monsanto Br. 52-53. Plaintiffs do not explain how EPA, consistent with its duty to

---

[4] Plaintiffs inject the 50-year old issue (at 43) that "[i]n the 1970s, Monsanto provided EPA with studies containing falsified information." Plaintiffs' artful phrasing ignores the fact that a third-party laboratory committed industry-wide fraud, and that Monsanto was a victim of that fraud. It is also irrelevant. The affected studies were subsequently re-done, EPA reviewed validated studies, and concluded that glyphosate had "relatively low oncogenic [i.e., carcinogenic] potential." Glyphosate Tolerances: Summary of Tox Data Base (Aug. 22, 1978), https://perma.cc/2UWJ-28NB.

reject false statements on pesticide labeling, could approve a warning that EPA believes is false. *Id.*

EPA has not "disavowed" the 2019 letter in which it confirmed it would reject such a warning. Pls. Br. 35. In its 2022 letter, EPA explained that it "continues to stand behind its robust scientific evaluation of the carcinogenic potential of glyphosate." Appx1045 (2022 EPA Letter). EPA described its 2019 letter as follows: "The Agency concluded that the standard warning language for products containing glyphosate was false or misleading and therefore, any glyphosate products bearing the statement would be considered misbranded." *Id.* Nowhere does the 2022 letter disavow what "the Agency concluded" about the "standard warning language for products containing glyphosate."

It does not help Plaintiffs that EPA could approve language "that referenced the IARC's assessment that glyphosate was probably carcinogenic." Pls. Br. 44. Such language would have to be paired with a statement that "EPA has determined that glyphosate is *not* likely to be carcinogenic to humans." Appx0192-0193. Plaintiffs do not explain how this informational language would address the allegation in their complaint that Monsanto should have warned of "the carcinogenic characteristics of glyphosate." Appx0075-0076. Nor do they explain how Monsanto could even have made that statement at any relevant time. Before Mr. Schaffner was

diagnosed in 2006, Appx0039, Monsanto could not have warned him what IARC would say in 2015.

It also does not matter that certain cancer warnings slipped through EPA review in 2017. Pls. Br. 44. EPA clarified that it made "implementation mistakes," which were "erroneous because the proposed edits warned of a cancer risk that, according to EPA's assessment, does not exist." Appx0208 (*Hardeman* U.S. 9th Cir. Br.). These mistakes, EPA further explained, were the fault of registrants, who did not properly frame the warning as a "Human Hazard and Precautionary Statement." Appx0208. As a result, the change "did not receive" the appropriate "level of review." Appx0208. Plaintiffs cannot avoid impossibility preemption on the theory that Monsanto should have induced EPA to make a mistake by improperly framing a label change request.

**C.    Irrespective of Plaintiffs' Reliance On FIFRA's Miscellaneous Provision, They Cannot Avoid the Conclusion That EPA's Actions Carry The Force Of Law.**

To argue that EPA has not acted with the force of law, Plaintiffs again invoke (at 45) § 136a(f)(2). That reliance fails for the reasons explained above. *Supra* pp. 9-13. Further, irrespective of Plaintiffs' arguments for why the provision has some bearing on express preemption, they ignore the relevant question for impossibility preemption. It is not whether any EPA action is "conclusive of FIFRA compliance." Pls. Br. 33. It is whether complying with a state-law warning

requirement is impossible because the agency "would not approve" the warning, as reflected in "agency actions taken pursuant to [its] congressionally delegated authority." *Merck*, 139 S. Ct. at 1678-79.  Where EPA acts pursuant to delegated authority, and makes clear it would reject a cancer warning, compliance with state law is impossible.  Whatever it means for registration not to be a defense under § 136a(f)(2) is beside the point for impossibility preemption.

EPA acted within its authority in determining that glyphosate is not likely carcinogenic.  It has done so through notice-and-comment rulemaking.  *See, e.g.*, Final Rule: Glyphosate; Pesticide Tolerances, 73 Fed. Reg. 73,586, 73,589 (Dec. 3, 2008).  It has done so through statutory reregistration procedures culminating in "regulatory action."  7 U.S.C. § 136a-1(b)(5).  And it has done so through myriad label approvals, *supra* p. 4 & n.1, which have the force of law; when an agency "formally approves a label stating one thing with full and obvious notice of the directly contrary position, one can read the approval as rejecting the contrary position." *In re Zofran (Ondansetron) Prod. Liab. Litig.*, 57 F.4th 327, 343 (1st Cir. 2023).

Since preemption is supported by numerous formal agency actions, Plaintiffs' complaints about the August 2019 letter are irrelevant.  In any event, that letter was not a mere "statement" by "someone acting on behalf of an agency."  Pls. Br. 35 (quoting *Fellner*, 539 F.3d at 245).  EPA must determine whether pesticide labels

comply with FIFRA, and it discharged that responsibility in a letter to registrants—a format materially indistinguishable from FDA letters to drug applicants that have the force of law. *See Merck*, 139 S. Ct. at 1678-79.

## III. This Court Should Decide For Itself Whether Plaintiffs' Claim Is Preempted.

Though Plaintiffs were not parties in *Hardeman*, they now seek to invoke the Ninth Circuit's decision there to cut off further consideration of the preemption issue by this Court. That request, raised in this Court for the first time, cannot be squared with basic principles of collateral estoppel or precedents of this Court.

### A. Offensive Non-Mutual Issue Preclusion Does Not Apply.

Plaintiffs invoke issue preclusion (or "collateral estoppel") in an "offensive" and "non-mutual" setting, i.e., where "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Even where the threshold requirements for issue preclusion are met, the Supreme Court instructs that courts "should not allow the use of offensive collateral estoppel" where "the application of offensive estoppel would be unfair to a

defendant." *Id.* at 331. For several independent reasons, preclusion cannot apply here.[5]

*First*, this Court "generally refuse[s] to consider issues that the parties have not raised below." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 249 (3d Cir. 2013). Plaintiffs and MDL Counsel (who represented Plaintiffs in opposing summary judgment before the MDL court, *see* MDL Counsel Br. 6-8) admit that Plaintiffs did not raise issue preclusion below. Pls. Br. 47; MDL Counsel Br. 23. While MDL Counsel argue that a court can apply preclusion even if not timely raised, they ignore that this is only "appropriate in special circumstances." *Arizona v. California*, 530 U.S. 392, 412 (2000) (cited at MDL Counsel Br. 22-23). No special circumstance excuses Plaintiffs' forfeiture. None of MDL Counsel's cited cases even involves offensive non-mutual preclusion. The Supreme Court specifically directed "trial judge[s]" to apply such preclusion cautiously, so it would be anomalous to excuse Plaintiffs' failure to ask the trial judge to apply it. *Parklane*, 439 U.S. at 321.

*Second*, as Plaintiffs admit, preemption is a "legal issue." Pls. Br. 54; *accord Merck*, 139 S. Ct. at 1672 ("pre-emption is . . . for a judge to decide"). And the Restatement of Judgments explains that offensive non-mutual issue preclusion is

---

[5] The "preclusive effect of a prior federal court action" is determined by "federal common law principles of issue preclusion." *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995).

inappropriate when "[t]he issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based." *Restatement (Second) of Judgments* § 29(7). Several circuits follow this rule. *See Pharm. Care Mgmt. Ass'n v. District of Columbia*, 522 F.3d 443, 446-47 (D.C. Cir. 2008) (applying *Restatement* § 29 to reject preclusion of a question of law "[i]n a non-mutual case"); *Chi. Truck Drivers Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 531 (7th Cir. 1997) (same); *Envt'l Def. v. EPA*, 369 F.3d 193, 203 (2d Cir. 2004) (refusing to apply collateral estoppel because, "where pure questions of law—unmixed with any particular set of facts—are presented to a court, the interests of finality and judicial economy may be outweighed by other substantive policies").[6]

Plaintiffs and MDL Counsel identify no case applying offensive non-mutual issue preclusion to preemption. At least one court recognized that it would be "patently inequitable to preclude [defendant] from challenging a prior determination of the scope of MDA preemption, when other litigants would be free to urge that the

---

[6] Section 28 of the Restatement adopts a more limited version of the question-of-law exception for *mutual* preclusion cases. This Court has applied Section 28 to require that "the two actions involve claims that are substantially unrelated," or a new determination is warranted because of a change in law "or otherwise to avoid inequitable administration of the laws." *Burlington*, 63 F.3d at 1237. Although *Burlington* was a non-mutual case, the difference between the Section 28 and 29 standards does not appear to have been raised, and this Court subsequently recognized that Section 28 concerns the "relevant equitable factors to be considered in a case of *mutual* collateral estoppel." *Nat'l R.R. Passenger v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002) (emphasis added).

rule from the prior litigation should be rejected." *Eggerling v. Advanced Bionics, L.L.C.*, 958 F. Supp. 2d 1029, 1034-35 (N.D. Iowa 2013). The silence of other cases is equally telling—on Plaintiffs' view, the Supreme Court should never have reached the merits in *Riegel*, because the defendant (Medtronic) had litigated and lost the scope of MDA preemption a decade earlier. *See Goodlin v. Medtronic, Inc.*, 167 F.3d 1367, 1369-82 (11th Cir. 1999). This case, where Plaintiffs did not even raise preclusion in the district court, should not be the first to apply the fraught doctrine of offensive, non-mutual issue preclusion to preemption.

*Third*, granting non-mutual issue preclusive effect to *Hardeman* cannot be squared with the way it became final. After Monsanto petitioned for certiorari, the Supreme Court called for the views of the Solicitor General. *See* Appx1066 (*Hardeman* U.S. S. Ct. Br.). In recommending denial, the Solicitor General alerted the Court to other cases where Monsanto presented the same preemption argument, and suggested the Court could later grant review if "a conflict in authority emerges." Appx1084. The Court thus denied certiorari in *Hardeman* with the understanding that Monsanto would have continued opportunities to litigate preemption, making it paradoxical to treat *Hardeman* as precluding Monsanto from litigating the issue again. *See S. Union Co. v. FERC*, 857 F.2d 812, 816 (D.C. Cir. 1988) ("In light of the distinct possibility that the Court may have declined to issue the writ [of

certiorari] in deference to the pendency of the proceedings below, we decline to apply the doctrine of collateral estoppel with its full rigor . . . .").

The *Hardeman* proceedings also reinforce the importance of Plaintiffs' forfeiture. Plaintiffs opposed summary judgment on October 1, 2021—after the Ninth Circuit decided *Hardeman*, and while Monsanto's certiorari petition was pending. Appx0009-0010. Had Plaintiffs argued that *Hardeman* is preclusive, and had the MDL court agreed, that would have loomed large in the certiorari proceedings. Plaintiffs and MDL Counsel benefited from not alerting the Supreme Court to this preclusion argument at the time, making it all the inequitable for them to raise it now.

*Fourth*, this Court refuses to apply non-mutual issue preclusion where "'[t]he determination relied on as preclusive was itself inconsistent with another determination of the same issue.'" *ADP, LLC v. Rafferty*, 923 F.3d 113, 124 n.10 (3d Cir. 2019) (quoting *Restatement (Second) of Judgments* § 29 cmt. f (Am. L. Inst. 1982)). Before the Ninth Circuit decided *Hardeman*, another court agreed with Monsanto that FIFRA expressly preempts a claim for failure to warn that Roundup® causes cancer. *See Carson v. Monsanto*, 508 F. Supp. 3d 1369, 1376 (S.D. Ga. 2020). That decision is on review before the *en banc* Eleventh Circuit. Accordingly, "there are clearly inconsistent prior determinations, such that this Court cannot be confident in" the Ninth Circuit's interpretation. *ADP*, 923 F.3d at 124 n.10; *cf. In re*

*E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 917, 923 (6th Cir. 2022) (considering it "important[]" that "the district court applied collateral estoppel only after three consistent jury verdicts for the Plaintiffs in the only cases to proceed to trial").

### B.    Law Of The Case Does Not Apply.

Plaintiffs fare no better insisting (at 53-55) that the Ninth Circuit's *Hardeman* decision is the "law of the case." As with preclusion, Plaintiffs opposed summary judgment without raising a law-of-the-case argument. *See* Pls. MDL Wave 3 Opp'n, *In re RoundUp Prods. Liab. Litig.*, No. 3:16-md-02741 (N.D. Cal. Oct. 1, 2021), ECF No. 13885. It is likewise forfeited.

It is also foreclosed by precedent. This Court recently held that "[t]he law of the case doctrine cannot be applied across distinct actions in [a] multidistrict proceeding [because] [c]ases centralized in an MDL retain their separate identities unless they choose to proceed on a consolidated 'master' complaint." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023) (quotation marks omitted). Although Plaintiffs (at 53) invent the moniker "global decision" to describe *Hardeman*, they do not suggest that their original complaint was ever superseded by a consolidated master complaint. This case and *Hardeman* "retain[ed] their separate identities," so the *Hardeman* decision cannot be the law of *this* case. *Home Depot*, 59 F.4th at 61.

MDL Counsel offer a workaround, claiming that *Hardeman* is indirectly controlling because the MDL Court's Pre-Trial Order ("PTO") 158 purportedly "determin[ed] that Ninth Circuit law would govern federal issues." Yet all PTO 158 says is that the MDL "Court will follow the Ninth Circuit's *Daubert* caselaw, and more generally its own best judgment about the meaning of federal law, for all of the cases *in the MDL*." PTO 158 at 4, https://perma.cc/L6FA-RQ29 (emphasis added; quotation marks omitted). Far from suggesting that Ninth Circuit precedent somehow travels with MDL cases post-remand, PTO 158 *distinguished* the post-remand question, noting that "the Fifth Circuit applied the law of its own circuit after a case had been remanded from an MDL in the Seventh Circuit." *Id.* at 3, n.1 (citing *In re Ford Motor Co.*, 591 F.3d 406, 409, 413 n.15 (5th Cir. 2009));[7] *see also* Tr. 4:18-21, *In re RoundUp Prods. Liab. Litig.*, No. 3:16-md-02741 (N.D. Cal. Feb. 15, 2023), ECF No. 16276 (Chhabria, J.) ("[A]ll my PTO 158 said, if I recall, was that . . . to the extent that there is a difference between Ninth Circuit *Daubert* law and other circuits['] *Daubert* law, I'm going to apply Ninth Circuit *Daubert* law."). And even if PTO 158 purported to bind the transferor district court, "an appellate court is

---

[7] *Ford* is far more relevant than *In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432 (3d Cir. 2009) (cited by Pls. Br. 54), which did not involve choice-of-law questions or the effect of MDL orders post-remand.

not bound by district court rulings under the law-of-the-case doctrine." *Saint-Jean v. Palisades Interstate Park Comm'n*, 49 F.4th 830, 836 (3d Cir. 2022).[8]

In sum, Plaintiffs and MDL Counsel offer no sound justification for asking this Court not to resolve the preemption issue on the merits.[9]

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

Dated: June 1, 2023

/s/ *David M. Zionts*

K. Lee Marshall
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4070
(415) 675-3400

David M. Zionts (D.C. Bar No. 995170)
Michael X. Imbroscio
Patricio G. Martínez Llompart
Emily A. Vernon
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Counsel for Defendant-Appellant Monsanto Company*

---

[8] MDL Counsel's suggestion (at 25 & n.10) that Monsanto should have "challenge[d] PTO 158" "through direct appeal to the Ninth Circuit" makes no sense, as there was no final appealable judgment in this case until it was remanded.

[9] MDL Counsel mischaracterize (at 27) an arms-length settlement agreement as "purchasing appellate litigation." If requested by the Court, Monsanto has no objection to filing that agreement under seal, which would confirm its consistency with *Keefe v. Prudential Property & Casualty Insurance Co.*, 203 F.3d 218 (3d Cir. 2000).

**CERTIFICATE OF COMPLIANCE**

1.     This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,437 words, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point, Times New Roman font.

3.     Pursuant to Third Circuit Local Appellate Rule 31.1(c), the text of the electronic brief is identical to the text in the paper copies.

4.     Pursuant to Third Circuit Local Appellate Rule 31.1(c), a virus detection program, Advanced Endpoint Protection Cortex XDR Agent v. 7.9.0, has been run on the electronic file and no virus was detected.

*/s/ David M. Zionts*

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Third Circuit Local Appellate Rule 28.3(d), I certify that the following attorneys whose names appear on the brief are members of the bar of this Court or have filed an application for admission pursuant to Third Circuit Local Appellate Rule 46.1:

K. Lee Marshall

Michael X. Imbroscio

David M. Zionts

/s/ *David M. Zionts*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2023, I caused the foregoing document to be electronically filed with the United States Court of Appeals for the Third Circuit using the appellate CM/ECF System for filing and transmittal of a Notice of Electronic Filing to counsel of record.

*/s/ David M. Zionts*