No. 22-3075

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

DAVID SCHAFFNER, JR. and
THERESA SUE SCHAFFNER
*Plaintiffs-Appellees,*

v.

MONSANTO COMPANY,
*Defendant-Appellant.*

On Appeal from the United States District Court for the
Western District of Pennsylvania,
No. 2:19-cv-1270-CRE (Eddy)

## BRIEF FOR AMICUS CURIAE PUBLIC JUSTICE
## IN SUPPORT OF APPELLEES' PETITION FOR
## PANEL REHEARING OR REHEARING EN BANC

Leah M. Nicholls
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 797-8600
LNicholls@publicjustice.net

*Counsel for Amicus Curiae*

# DISCLOSURE STATEMENT

In accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure and Third Circuit Rule 26.1, the undersigned certifies that there is no publicly traded company or corporation with an interest in the outcome of this case that has not already been disclosed to this Court.

September 19, 2024  /s/ Leah M. Nicholls
Leah M. Nicholls

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ................................................................................. i
TABLE OF AUTHORITIES ................................................................................. iii
INTEREST OF AMICUS CURIAE ........................................................................1
INTRODUCTION AND SUMMARY OF ARGUMENT .......................................2
ARGUMENT ...........................................................................................................3
I.    Rehearing En Banc Is Warranted Because the Panel Decision Conflicts with *Bates*...................................................................................................................3
II.   As *Bates* Made Clear, Congress Intended State Tort Law to Complement Federal Regulation Under FIFRA. .................................................................8
CONCLUSION ......................................................................................................11
COMBINED CERTIFICATIONS
CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005)..................................................................2, 4–11

*Ferebee v. Chevron Chem. Co.*,
    736 F.2d 1529 (D.C. Cir. 1984)..................................................................11

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022) ....................1

*Wisc. Pub. Intervenor v. Mortier*,
    501 U.S. 597 (1991)..................................................................8, 10

## STATUTES

7 U.S.C. § 136(q)(1)(G)..................................................................2, 8

7 U.S.C. § 136a(f)(2) ..................................................................5

7 U.S.C. § 136j(a)(1)(E) ..................................................................2

7 U.S.C. § 136v(a) ..................................................................5

7 U.S.C. § 136v(b) ..................................................................5, 6

## OTHER AUTHORITY

Hursh, R.D., *Annotation, Liability of Manufacturer or Seller for
    Injury Caused by Animal Feed or Medicines, Crop Sprays,
    Fertilizers, Omsectocodes. Rodenticides, and Similar Products*,
    81 A.L.R.2 138, 144 (1962)..................................................................9–10

# INTEREST OF AMICUS CURIAE[1]

Public Justice is a national public interest advocacy organization specializing in precedent-setting and socially significant civil litigation dedicated to preserving access to the civil justice system. Public Justice has a long history of fighting federal preemption in cases involving dangerous products. As part of that work, Public Justice was appellate counsel in *Hardeman v. Monsanto Co.*, 997 F.3d 941 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2834 (2022), which affirmed a $25 million judgment for a man who contracted non-Hodgkin's lymphoma from Roundup. Public Justice has a strong interest in preserving the rights of all persons who have been injured by Roundup—and other dangerous products—to obtain justice via the tort system.

---

[1] Neither party's counsel authored this brief in whole or in part and no party contributed money intended to fund preparing or submitting this brief. No party opposes Public Justice's motion for leave to file this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The panel held that state tort suits challenging federally approved labels of pesticides are categorically preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). But the Supreme Court addressed that question in *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), and came to a different conclusion: FIFRA does not preempt "state rules that are fully consistent with federal requirements" even if the relevant federal agency—the Environmental Protection Agency (EPA)—approved the label as part of the product's registration. 544 U.S. at 452. Because the panel decision is directly contrary to *Bates*, rehearing is warranted.

Here, as in *Bates*, the question is whether the state tort law requirement is consistent with FIFRA's prohibition on distributing or selling "any pesticide which is . . . misbranded." 7 U.S.C. § 136j(a)(1)(E). One of the ways in which a pesticide is misbranded is for its label to omit "a warning or caution statement which may be necessary and if complied with . . . is adequate to protect health and the environment." 7 U.S.C. § 136(q)(1)(G). Here, the Schaffners contend that Pennsylvania law required Monsanto to include additional warnings that Roundup can cause cancer and that Pennsylvania law is consistent with FIFRA's prohibition on misbranding. Monsanto argued—and the panel agreed—that although neither FIFRA nor its implementing regulations addresses whether or when warnings about chronic conditions like cancer are warranted, the Pennsylvania-law requirement is

preempted because EPA approved the Roundup label. *Bates* expressly rejected that conclusion, holding that the fact of approval did not necessarily mean that challenges to an approved label are preempted.

There is also no policy reason to find preemption where a state-law challenge to a pesticide label is consistent with federal labeling requirements. As *Bates* also explained, Congress intended for state tort suits, including those challenging federally approved labels, to continue alongside federal regulation of the products governed by FIFRA. FIFRA expressly envisions a significant role for states to play in regulating FIFRA-governed products, and state tort suits incentivize manufacturers to monitor and update labels to conform to FIFRA's requirements that they do so. By holding that state-law challenges to federally approved labels are categorically preempted, the panel's decision encourages manufacturers to turn a blind eye to new information about the dangers of its products that might lead to label changes, contrary to FIFRA's intent.

## ARGUMENT

### I. Rehearing En Banc Is Warranted Because the Panel Decision Conflicts with *Bates*.

The panel decision below conflicts with *Bates*—the only case in which the Supreme Court has addressed FIFRA preemption of state common-law suits—because it endorses the premise that *Bates* rejected: Where EPA has reviewed a pesticide's label and approved the pesticide for registration, any state law requiring

3

a different label is preempted. Instead, as *Bates* explains, state-law labeling requirements are not preempted if they are consistent with the substantive requirements of FIFRA and its regulations—*even if* the state law would require a label different from that approved and registered by the EPA.

Like this case, *Bates* involved state-law fraud and failure-to-warn claims that, if successful, would have found the manufacturer liable for failing to add a warning to its label. 544 U.S. at 446. There, the plaintiffs alleged that a Dow weed killer's EPA-approved label falsely stated that it was "recommended [for use] in all areas where peanuts are grown." *Id.* at 434–35. In fact, the weed killer severely damaged peanut crops and failed to control weeds in areas, like the plaintiffs', with high-pH soil. *Id.* at 435. After the farmers notified Dow, the manufacturer sought, and received, permission from EPA to add a supplemental label warning users to not use the product in areas with high-pH soil. *Id.* The plaintiffs sued based on damages to their crops from before Dow changed the label to add the warning. *Id.*

Like Monsanto does here, Dow argued the plaintiffs' label-based claims were expressly preempted by § 136v(b) of FIFRA. The Fifth Circuit agreed, reaching a conclusion remarkably similar to that of the panel here: "It read § 136v(b) to preempt any state-law claims in which 'a judgment against Dow would induce it to alter its product label.'" *Id.* at 436 (quoting Fifth Circuit decision).

The Supreme Court reversed, holding that FIFRA does not preempt state-law requirements that parallel FIFRA labeling requirements, even where—as in *Bates*—the state law would require something different from what was included on the EPA-approved label. *Id.* at 452–53. In doing so, the Court hewed closely to FIFRA's text, interpreting its preemption provision to mean what it says: "A State may regulate the sale or use of any federally registered pesticide," 7 U.S.C. § 136v(a), but "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter," *id.* § 136v(b). That is, so long as the state requirements match the federal requirements, state laws regarding pesticide labeling are not preempted. And "state law need not explicitly incorporate FIFRA's standards as an element of a cause of action in order to survive preemption." *Bates*, 544 U.S. at 447.

In the context of misbranding, at issue here and in *Bates*, the Supreme Court explained that it was possible for a pesticide's label to have been approved by EPA yet still be misbranded as a matter of *federal* law. *See id.* at 438. That is because, as provided by the text of the statute, EPA registration of a pesticide is only "prima facie evidence that the pesticide, its labeling and packaging comply with [FIFRA's] registration provisions," including the registration provisions' prohibition on misbranding. 7 U.S.C. § 136a(f)(2); *Bates*, 544 U.S. at 438. In other words, the text of FIFRA itself contemplates that label approval does not mean the product is not

5

misbranded. Further, the statute and its regulations impose on manufacturers "a continuing obligation to adhere to FIFRA's labeling requirements" and require manufacturers "to report incidents involving a pesticide's toxic effects that may not be adequately reflected in its label's warnings." *Id.* at 438–39. Thus, even if a product is not misbranded at the time the label is approved, it may become misbranded if a manufacturer fails to update the label.

In sum, even if a pesticide label was approved by EPA, it may still violate FIFRA's prohibition on misbranding. And to the extent state law imposes requirements that are not "in addition to or different from those [federal standards]," 7 U.S.C. § 136v(b)—that is, that they impose the same standard as FIFRA's misbranding provision—state law is not preempted. *Bates*, 544 U.S. at 452–54.

The panel here, however, equated the fact that EPA had approved the label with permanent compliance with FIFRA's misbranding requirements. Op. 49. The decision explained, "Because the EPA approves a pesticide label only if it has determined that the product is not misbranded as that term is defined in FIFRA, the requirement not to modify the Preapproved Label likewise prohibits pesticides from bearing particular labels that, in EPA's view, constitute misbranding. Each regulation requires pesticide labels to conform to EPA's opinion as to whether specific labels would constitute misbranding, and thus each gives content to the broad requirement that such labels not be misbranded." *Id.* (internal quotation marks

6

and citations omitted). Under the panel's reasoning then, *any* state-law challenge to an approved label—even if the substance of the state law is exactly the same as FIFRA requirements—would be preempted.

That is directly contrary to *Bates*, which held that state-law challenges to EPA-approved labels can go forward if the state-law requirements do not impose different or additional substantive requirements to those imposed by FIFRA and its regulations. 544 U.S. at 452. It is not, as the panel described it, a question of whether the relevant federal standard is the statue's general prohibition on misbranding or the regulations giving content to the meaning of "misbranded." Op. 25–27. There is no dispute that a state law is preempted if it is contrary to federal regulations "giv[ing] content" to what a label can or cannot say; there cannot be "50 different labeling regimes prescribing the color, font size, and wording of warnings." *Bates*, 544 U.S. at 452, 453.

But *Bates* is clear that the approval process is not such a regulation. Just as the panel did here, *Bates* recognized that EPA label approval reflected the agency's decision at that time that the product's "label complies with the statute's prohibition on misbranding." *Id.* at 438. But, directly contrary to the panel's decision here, *Bates* did not see approval as in and of itself "giv[ing] content" to the statute's misbranding provision. *Id.* at 453. Only regulations addressing whether and how certain aspects of the label can appear "give content" to FIFRA's prohibition on misbranding. *Id.* at

7

452–54. Here, because there is no regulation addressing warnings about chronic conditions, the question is whether the Pennsylvania claims are consistent with FIFRA's provision that a pesticide is misbranded when its label omits "a warning or caution statement which may be necessary and if complied with . . . is adequate to protect health and the environment." 7 U.S.C. § 136(q)(1)(G). The panel's holding that the fact of approval, rather than an analysis of misbranding under FIFRA, preempts the Schaffner's claims is squarely contradicted by *Bates*.

## II. As *Bates* Made Clear, Congress Intended State Tort Law to Complement Federal Regulation Under FIFRA.

As the petition explains, Reh'g Pet. 19–22, finding nearly all state tort-law claims about pesticide labeling to be preempted—as the panel decision does—would permit manufacturers like Monsanto to evade liability for failing to update its labels in light of the latest information about the dangers of its pesticides, making this case exceptionally important. That result is not only problematic as a normative matter, but is contrary to Congress' intent in designing FIFRA's regulatory regime, which was intended to work in concert with state law, not displace it.

As *Bates* explained, Congress intended state law to complement federal regulation. To start, FIFRA "leaves ample room for States and localities to supplement federal efforts"—federal regulation is not exclusive in this space. *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 613 (1991). Indeed, *Bates* expressly rejected the conclusion that the panel decision embraced here: that preemption of

8

virtually all state-law labeling claims is necessary in the interest of uniformity. Op. 51–53; *see Bates*, 544 U.S. at 451–52 ("We have been pointed to no evidence that such tort suits led to a 'crazy-quilt' of FIFRA standards or otherwise created any real hardship for manufacturers or for EPA."). *Bates* described Dow's uniformity arguments, echoed by the panel's reasoning here, as "unpersuasive" and found that Dow "greatly overstate[d] the degree of uniformity and centralization that characterizes FIFRA." 544 U.S. at 450. FIFRA, the Court pointed out, "authorizes a relatively decentralized scheme that preserves a broad role for state regulation," allowing states to ban or restrict EPA-approved pesticides and register pesticides for purposes beyond those authorized by EPA. *Id.* And, at a minimum, "[m]ost states conduct a review of the pesticide label to ensure that it complies with federal labeling requirements." *Id.* at 442 n.14 (quoting EPA website).

With regard to state tort law in particular, *Bates* made clear that Congress intended state tort suits to continue after the passage of FIFRA. At the time FIFRA was originally enacted in 1947 and at the time it was substantially amended in 1972, state-law tort suits against pesticide manufacturers were common. *Id.* at 440–41. Contemporaneous secondary sources recognized that manufacturers of products regulated by FIFRA had a duty of care that included "a duty to warn of product-connected dangers." *Id.* at 441 n.13 (quoting R.D. Hursh, Annotation, *Liability of Manufacturer or Seller for Injury Caused by Animal Feed or Medicines, Crop*

9

*Sprays, Fertilizers, Insecticides, Rodenticides, and Similar Products*, 81 A.L.R.2d 138, 144 (1962)). Given this "long history of tort litigation against manufacturers of poisonous substances[,] . . . [i]f Congress had intended to deprive injured parties of a long available form of compensation, it surely would have expressed that intent more clearly." *Id.* at 449. In short, Congress knew that state-law tort claims challenging labels were common and declined to expressly displace them.

That's because the substantial history of these types of state tort suits "emphasizes the importance of providing an incentive to manufacturers to use the utmost care in the business of distributing inherently dangerous items." *Id.* at 450. Indeed, one of the purposes of the 1972 amendments to FIFRA was to "ensure that these [labeling] requirements were followed in practice"—not to reduce the enforcement mechanisms available. *Mortier*, 501 U.S. at 613. Given those goals, *Bates* explained, "it seems unlikely that Congress considered a relatively obscure provision like § 136v(b) to give pesticide manufacturers virtual immunity from certain forms of tort liability," particularly given that "under-enforcement [of FIFRA's misbranding prohibition] creates not only financial risks for consumers, but risks that affect their safety and the environment as well." 544 U.S. at 450.

Indeed, "[p]rivate remedies that enforce federal misbranding requirements would seem to aid, rather than hinder, the functioning of FIFRA." *Id.* at 451. "FIFRA contemplates that pesticide labels will evolve over time, as manufacturers gain more

information about their products' performance" and "tort suits can serve as a catalyst in this process." *Id.* Because state tort law "encourage[es] plaintiffs to bring suit for injuries not previously recognized as traceable to pesticides," such suits "may aid in the exposure of new dangers associated with pesticides." *Id.* (quoting *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1541 (D.C. Cir. 1984)). In turn, state tort actions could lead manufacturers to petition EPA to change their labels or EPA itself may take notice that a change is required. *Id.* "In addition, the specter of damage actions may provide manufacturers with added dynamic incentives to continue to keep abreast of all possible injuries stemming from use of their product so as to forestall such actions through product improvement." *Id.* (internal quotation marks omitted). Because state tort suits work to further the purpose of FIFRA, not hinder it, "EPA appears to have welcomed these tort suits." *Id.* at 452.

In short, state tort suits—which have long been brought against pesticide manufacturers based on improper labeling—further the objectives of FIFRA to keep pesticide labels accurate, up to date, and sufficiently protective of health. Congress was well aware of the prevalence of state tort suits in this area, and embraced rather than displaced them.

## CONCLUSION

For these reasons and the reasons stated in Appellees' Petition for Panel Rehearing or Rehearing En Banc, the Court should grant rehearing.

September 19, 2024                 Respectfully Submitted,

                                   <u>*/s/ Leah M. Nicholls*</u>
                                   Leah M. Nicholls
                                   PUBLIC JUSTICE
                                   1620 L Street NW, Suite 630
                                   Washington, DC 20036
                                   (202) 797-8600
                                   LNicholls@publicjustice.net

                                   *Counsel for Amicus Curiae*

# COMBINED CERTIFICATIONS

*Bar membership.* I am a member of the bar of the United States Court of Appeals for the Third Circuit.

*Word limit.* This document complies with the type volume requirements of Fed. R. App. P. 29(b)(4) because it contains 2,595 words as calculated with the word-counting feature of Microsoft Office, excluding the portions of the document exempted by Fed. R. App. P. 32(f).

*Typeface and typestyle.* This document complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in 14-point Times New Roman font, which is a proportionally spaced typeface.

*Identical copies.* The text of the electronic brief is identical to the text in the paper copies.

*Virus check.* The electronic brief has been scanned for viruses with Bitdefender Endpoint Security software. No virus was detected by the software.

September 19, 2024          */s/ Leah M. Nicholls*
                                                 Leah M. Nicholls

                                                 *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served via the Court's electronic case management system upon all counsel of record.

September 19, 2024

/s/ *Leah M. Nicholls*
Leah M. Nicholls

*Counsel for Amicus Curiae*